**Sandra DOUGLAS, Plaintiff,**

v.

**James H. EVANS, in his Individual Capacity as former Attorney General of Alabama; and Jeff Sessions, in his Official Capacity as present Attorney General of Alabama, Defendants.**

Civ. A. No. 94–D–327–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 12, 1995.

Ann K. Wiggins, Robert L. Wiggins, Jr., C. Paige Williams, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

Robert D. Segall, Kenneth Lamar Thomas, Montgomery, AL, for defendants.

### MEMORANDUM OPINION [1]

DE MENT, District Judge.

■ Presently before the court is Defendant's Motion to Dismiss Plaintiff's complaint

---

1. Sandra Douglas brought this action against James Evans in his individual capacity and official capacity, as Attorney General of Alabama. Jeff Sessions defeated Mr. Evans in his bid for reelection. Therefore, the action against Mr. Ev- ans in his official capacity passes to Jeff Sessions, as Rule 25 of the *Federal Rules of Civil Procedure* instructs:

When a public officer is a party to an action in his official capacity and during its pendency

pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* filed April 7, 1994. Plaintiff filed a response and supporting brief in opposition to Defendant's motion on May 3, 1994. A comprehensive and detailed analysis of the pleadings and applicable law compels the conclusion that Defendant's motion is due to be granted in part and denied in part.

### JURISDICTION & VENUE

Jurisdiction is proper, as Plaintiff alleges violations of 42 U.S.C. §§ 1983 and 2000e *et seq.* (hereinafter "Title VII"), the Equal Protection and Free Speech clauses of the United States Constitution as made applicable to the states by Amendment XIV, and 29 U.S.C. 621 *et seq.,* the Age Discrimination in Employment Act (hereinafter "ADEA").[2] Moreover, the court exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as Plaintiff claims violations of Alabama statutory law. Personal jurisdiction and venue are not contested.

### BACKGROUND

Plaintiff, Sandra Douglas, (hereinafter Ms. "Douglas" or the "Plaintiff") has served over thirteen years and under three Attorneys General during her tenure with the Alabama Attorney General's Office. Plaintiff has served with distinction as is evidenced by the evaluations she received during her employment. Douglas has, at all relevant times, served in the Attorney General's Utility section. Although she does not possess a law degree, Douglas claims that she has served as the Chief of that section for ten years and supervised attorneys who were assigned to the Consumer Utility Section.

In late 1991, the auditing staff of the Public Service Commission (hereinafter the "PSC") issued a show cause order inquiring as to the manner in which South Central Bell accounted for profits generated by its affiliate, Bell Advertising and Publishing Corporation (hereinafter "BAPCO") for several years. Allegedly, the audit substantiated the conclusion reached by Plaintiff that Alabama South Central Bell consumers were entitled to refund of possibly as much as forty million dollars ($40,000,000.00). After consulting with James Evans (hereinafter Mr. "Evans" or the "Defendant"), the Attorney General for the State of Alabama, regarding this concern, Defendant agreed to take the necessary action to resolve the matter.[3] Accordingly, Douglas filed a notice on Defendant's behalf manifesting Defendant's intent to intervene in the action which was set for hearing in October, 1991. However, the hearing never took place as the PSC canceled the meeting unexpectedly.

In December, 1991, Douglas claims to have learned that South Central Bell and the PSC were clandestinely engaging in settlement negotiations regarding the BAPCO matter. Consequently, Plaintiff allegedly requested, and Evans granted her, permission to take all necessary actions to halt the covert discussions. However, Plaintiff never received the opportunity to place her plan into work because the PSC settled the case on January 16, 1992. Plaintiff believes that this settlement was not in good faith.

Douglas asked Defendant about appealing the PSC's order in late January, 1992. Two meetings were conducted in which discussions of the issue of whether Mr. Evans should appeal the PSC's order transpired. Following these meetings, Plaintiff believed that Defendant would not appeal from the PSC's order. Plaintiff claims that she then contacted Ronald W. Wise, Esq., who con-

---

... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.
Fed.R.Civ.P. 25(d).

**2.** Pursuant to 28 U.S.C. § 1331, the federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws.... of the United States." Moreover,

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) * * * *
(2) To redress the deprivation, under color of State law statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens....
28 U.S.C. § 1343(a)(3).

**3.** Mr. James Evans served as Alabama's Attorney General from 1990 to 1994.

cluded that the BAPCO merited judicial review. Douglas then filed an action in the Circuit Court of Montgomery County, Alabama.[4]

Within days after filing the aforementioned lawsuit, Deputy Attorney General Bill Mayer replaced Douglas as Director of Consumer Utility—a position Plaintiff had held, as aforesaid, for ten years. Plaintiff was allegedly told that if she did not accept a transfer to the Consumer Protection Division of the office, Defendant would abolish her position. However, Douglas allegedly refused to transfer voluntarily. Plaintiff contends that harassment ensued and has persisted since that day. Plaintiff avers that the harassment culminated in her transfer to the isolated surroundings of the Alabama Statehouse basement, where she is allegedly deprived of the congeniality associated with the professional rapport of her colleagues. The alleged harassment has also caused a purported deprivation of meaningful job assignments, ostracism by Mr. Evans, repayment of sick and annual leave before their accrual, loss of reserved parking space and loss of a personal computer at work. Douglas contends that the aforementioned acts are the fruits of retaliation for voicing her opinion on a matter of public concern.

Plaintiff claims that Deputy Attorney General Mayer vacated the Director of Consumer Utility position in January, 1993. However, she was not promoted to her former position despite her qualifications. Instead, Plaintiff contends, Anita Young was hired into the position. According to Douglas, Ms. Young is a newly licensed, younger, African-American, female attorney. In June, 1993, Plaintiff filed a charge of race and age discrimination against Defendant for failure to promote her to the newly vacated position in January, 1993. Douglas alleges that the filing of the EEOC charge lead to intensified retaliation.

On March 15, 1994, Plaintiff instituted the above-styled action. Douglas amended her complaint on May 3, 1995. Plaintiff alleges that Defendant's acts amount to violations of the following federal constitutional and statutory provisions: procedural and substantive due process, First Amendment right to engage in free political speech, equal protection clause of the United States Constitution, 42 U.S.C. §§ 1981 and 2000e *et seq.*, Age Discrimination in Employment Act. Plaintiff also claims that Defendant violated §§ 32-26-10 and 36-26-23 of the Alabama Code because the alleged adverse employment decision was not predicated on merit and competition. Plaintiff seeks declaratory and prospective injunctive relief against Defendant in his official capacity and pecuniary damages against Defendant in his individual capacity. Subsequently, Defendant filed the pleading presently before the court contending that Amendment XI to the United States Constitution shields him from liability in his official capacity regarding Plaintiff's federal law claims. Evans claims that qualified immunity shields him from liability in his individual capacity in the context of Plaintiff's federal law claims. Also, Defendant avers that the federal claims asserted by Plaintiff require heightened pleading, and Plaintiff has failed to so plead. Moreover, Evans contends that the Alabama statutory provisions underlying Plaintiff's state law claims do not permit private rights of action and, even if the provisions permitted private rights of actions, the decision to reassign Plaintiff is within the discretion of the Attorney General. Therefore, according to Defendant, Douglas' complaint as amended is due to be dismissed in accordance with Rule 12(b)(6) of the *Federal Rules of Civil Procedure* for failure to state a claim upon which relief may be granted.

## STANDARD FOR MOTION TO DISMISS

■ Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court

---

4. The lawsuit charged South Central Bell with fraud and deceit in its accounting methods in connection with BAPCO's revenues.

must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 326–28, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991), *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

■ The movant on motion to dismiss for failure to state a cause upon which relief may be granted "sustains a very high burden." [5] *Jackam v. Hospital Corporation of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The United States Eleventh Circuit Court of Appeals has held, "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982)), see *also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

The obvious explanation for this heightened, and almost insurmountable, standard is that discovery usually discloses many facts that are not available absent an in depth search for the truth. At this stage, the court's function is not to accord weight or credibility to the pleadings heretofore filed. It is patently unfair to deprive a plaintiff of his or her day in court at this juncture because no discovery has been conducted. However, Defendant is not without reprieve to avoid preparing for an action that is not trial-worthy. Summary judgment has become a prominent feature in American jurisprudence and is a useful tool in ridding the judicial system of actions lacking merit.

5. Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

6. The United States Supreme Court has explained that spheres in which substantive rights

## DISCUSSION

### I. Section 1983

■ Section 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of United States or other person within the jurisdiction of thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C. § 1983. A section 1983 claim is predicated on two indispensable elements:

> first, the conduct complained of must have been committed by a person acting under state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

*Whitehorn v. Harrelson,* 758 F.2d 1416, 1419 (11th Cir.1985) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). Defendants do not contend that Evans did not act under the color of state law when he made the alleged decision to transfer/demote Plaintiff. Rather, Defendant argues that the law provides no relief for the causes alleged by Plaintiff.

### A. Procedural and Substantive Due Process Claims

■ In *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994) (*en banc*), the United States Eleventh Circuit Court of Appeals concluded that a state employee alleging a pretextual termination does not state a substantive due process claim. The *McKinney* court, in overruling ten years of precedent, held that, "in nonlegislative cases, only procedural due process claims are available to pretextually terminated employees." *McKinney,* 20 F.3d at 1560.[6] Therefore, the

are created by state law, namely tort law and employment law cases, are not subject to due process protection under the Due Process because substantive due process rights emanate from the Constitution. *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct.

court finds that Plaintiff's substantive due process claim is due to be dismissed.

■ Evans claims that Plaintiff's procedural due process claim against him in his official capacity must fail because such a suit impugns the Eleventh Amendment[7] as the real party in interest is the State of Alabama. Generally, this is a viable argument, but there are exceptions to this general rule. One noted exception is where, as here, a plaintiff seeks injunctive relief to enjoin certain conduct by a state official. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Amendment XI does not bar suits for equitable relief against state officials in their official capacities nor preclude damage awards against state officials in their individual capacities. *Wu v. Thomas,* 863 F.2d 1543, 1550 (11th Cir.1989) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Plaintiff expressly states that she seeks injunctive relief against Defendant in his official capacity.

■ Alternatively, Defendant argues that Plaintiff's procedural due process claim is due to be dismissed as Plaintiff has no cognizable property or liberty interest at stake. When reviewing a due process claim, the initial inquiry is whether the plaintiff was deprived of a protected property or liberty interest. *Faucher v. Rodziewicz,* 891 F.2d 864, 869 (11th Cir.1990). The Eleventh Circuit is reluctant to conclude that "a transfer, which involves no loss of pay and no loss of rank, deprives a plaintiff of a protected liberty or property interest." *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th

Cir.1992). As stated by the court in *Moore v. Otero,* 557 F.2d 435 (5th Cir.1977),[8]

"[t]he internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest meriting protection under the due process clause of the Fourteenth Amendment."

*Moore,* 557 F.2d at 438. At this juncture, the court cannot assess the validity of the pleadings or evidence; therefore, the court finds that a summary disposal of Plaintiff's due process claim is unjustifiable. It may well be the case that Plaintiff cannot offer sufficient evidence to ultimately prevail at trial or defeat a motion for summary judgment; however, those stages have higher burdens of persuasion and/or production. The court is not to even consider evidence at this stage because discovery oft times uncovers facts and evidence not available when an action is filed initially. For instance, Plaintiff may produce documents demonstrating that the proposed change in position constituted a loss of employment. In fact, Plaintiff asserts that the removal from the position of Consumer's Utility Director stigmatizes her because the change in status amounts to a loss of meaningful employment. (Pl.'s Amend.Comp., p. 10).

■ Defendant argues further that the Plaintiff has not satisfied the heightened pleading requirement posed by section 1983 when an official is sued in his individual capacity. However, the *Federal Rules of Civil Procedure* do not mandate that plaintiff articulate, in detailed specificity, the facts upon which Douglas bases her claim. *Brown v. Nichols,* 8 F.3d 770, 773 (11th Cir.1993) (quoting *Leatherman v. Tarrant County*

507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring).

**7.** "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State ..." U.S. Const.Amend. XI; *see also Hans. v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The immunity provided by the Eleventh Amendment encompasses actions citizens of the state *against which the action is brought. See*

*e.g., Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 280, 93 S.Ct. 1614, 1615–16, 36 L.Ed.2d 251 (1973).

**8.** The Eleventh Circuit, in the *en banc* decision of *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

*Narcotics Intelligence & Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993)),[9] for Rule 8(a)(2) of the *Federal Rules of Civil Procedure* requires but "a short and plain statement showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Moreover, the Eleventh Circuit has assumed a textualist posture in applying rule 8(a) and has consistently acknowledged the liberality of the principles of notice pleading governing federal procedure. *Brown,* 8 F.3d at 773 (citing *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.,* 932 F.2d 1443, 1448 (11th Cir.1991); *Arnold v. Escambia County Board of Education,* 880 F.2d 305, 309 (11th Cir.1989)).

▬▬▬ Rule 9(b) of the *Federal Rules of Civil Procedure* requires particularized pleading in only two genre of actions: fraud and mistake. Fed.R.Civ.P. 9(b). Because the *Federal Rules of Civil Procedure* specifically set forth the actions requiring particularized factual pleading, and section 1983 is not so much as alluded to, the court is lead by the same maxim quoted by the United States Supreme Court in *Leatherman—expressio unius est exclusio alterius.* Moreover, because it is not the court's function to rewrite the *Federal Rules of Civil Procedure* but, rather, adhere to them, the court finds that claims against state officials in their individual, as well as official, capacity are not subjected to a heightened pleading requirement, as erroneously claimed by Defendant. As stated by the Supreme Court, in the absence of amending the Federal Rules of Civil Procedure, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious

claims sooner rather than later." *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163.[10]

**B. Free Speech**

▬▬▬ It is established in the Eleventh Circuit that "[a] state may not demote or discharge a public employee in retaliation for public speech." *Tindal v. Montgomery County Commission,* 32 F.3d 1535, 1539 (11th Cir.1994) (quoting *Morgan v. Ford,* 6 F.3d 750, 753–54 (11th Cir.1993)). However, "a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir. 1989) (citing *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). Consequently, the Circuit employs a four-prong analysis to determine whether a public employee experienced an adverse employment action predicated on the employee's speech. *Bryson,* 888 F.2d at 1565 (citing *Kurtz v. Vickrey,* 855 F.2d 723 (11th Cir. 1988)).

▬▬▬ The initial tier of the *Bryson* test asks whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Bryson,* 888 F.2d at 1565 (quoting *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 (citation omitted)). If Plaintiff's speech is a matter of private concern and does not address issues of public relevance, it warrants no Amendment I protection. *Tindal,* 32 F.3d at 1539 (citing *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). No First Amendment safeguards are affixed to dialogue that exposes personally experienced adversity for personal benefit. *See, e.g.,*

**9.** In *Leatherman,* the United States Supreme Court held that claims alleging municipal liability, based on constitutional violations by its employees, are not required to be pleaded with specificity. *Leatherman,* —— U.S. at ——, 113 S.Ct. at 1163. *Leatherman* was before the Court on appeal from the United States Fifth Circuit Court of Appeals. After determining that the Fifth Circuit placed more burdensome pleading requirements on claims arising under § 1983 than for pleading other types of claims for relief, the *Leatherman* Court stated,

"[w]e think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case with the liberal system of 'notice pleading' set up by the Federal Rules. Rule 8(a)(2) requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "

*Id.* at —— ——, 113 S.Ct. at 1162–63.

**10.** Defendant argues also that Plaintiff must proffer heightened pleading on her equal protection, Title VII, section 1981, and age discrimination claims. In light of the court's determination that heightened pleading is not required in section 1983 claims and the concomitant rationale, the court finds that the foregoing claims are not subjected to a heightened pleading standard.

*Morgan,* 6 F.3d at 754–55 (citations omitted). The court must scrutinize the content, form, and context of the employee's speech to assess its public worth. *Bryson,* 888 F.2d at 1565 (citing *Rankin,* 483 U.S. at 384–85, 107 S.Ct. at 2897).

█ The second part of the *Bryson* test inquires whether a public employee's interest in her speech outweighed the state's interest in promoting efficient service. *Bryson,* 888 F.2d at 1565 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)). The analysis at the prong hinges on the magnitude of disruption Douglas's speech would have on the efficiency of government activity. Therefore, Douglas is entitled to no Amendment I protection if her speech "so severely impeded [her] own effectiveness and the effectiveness of [the Attorney General and his staff] that the governmental interest at stake in this case clearly outweigh[ed Douglas's] speech interest." *Morales v. Stierheim,* 848 F.2d 1145, 1151 (11th Cir.1988), *cert. denied sub nom. Leon v. Avino,* 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989).

*Bryson's* third component examines "whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee." *Bryson,* 888 F.2d at 1565 (citing *Mt. Healthy City School Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The fourth and final determination which needs to be made under *Bryson* is whether the employer would have made the same decision even in the absence of the protected speech. *Bryson,* 888 F.2d at 1566 (citing *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 576).

█ Defendant has offered no meaningful argument or evidence which leads the court to believe that Plaintiff may not have a procedural due process claim rooted in the right to free speech. Defendant does not contend that Plaintiff's speech was not a matter of public concern. In fact, at this stage, the court does not believe Defendant can honestly make that argument considering that the court is obliged, and at this point does, to accord truth to all Plaintiff's factual contentions. Next, Defendant puts forth nothing which leads the court to believe that Plaintiff's speech had or would have had a disruptive and subversive effect on the smooth and efficient operation of the State of Alabama's Attorney General Office. Moreover, the court is not convinced that Douglas's speech did not precipitate the alleged adverse employment decision. Finally, there is no indication that Plaintiff would not have been reassigned but for the subject speech. In the final analysis, to conclude that Plaintiff has failed to state a First Amendment claim upon which relief may be granted is a *non sequitur.*

## C. Equal Protection

█ The equal protection clause provides Douglas "a right to be free from racial discrimination." *Busby v. City of Orlando,* 931 F.2d 764, 775 (11th Cir.1991) (citing *Washington v. Davis,* 426 U.S. 229, 239–41, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976)). In order to establish a violation of the equal protection clause, a plaintiff must demonstrate discriminatory motive or purpose. *Cross v. State of Alabama Department of Mental Health & Retardation,* 49 F.3d 1490 (11th Cir.1995) (citing *Whiting v. Jackson State University,* 616 F.2d 116, 122 (5th Cir.1980)). "[S]uch intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [Title VII]." *Whiting,* 616 F.2d at 121. Even if no direct evidence of discrimination exists, Plaintiff may construct a prima facie case and raise a presumption of unlawful discrimination. The court, as substantiated by the material contained in the next section, finds that Plaintiff has stated a claim upon which relief may be granted.

## D. Qualified Immunity

█ To round out his panoply of asserted defenses, Plaintiff argues that even if Plaintiff stated a claim upon which may be granted, he is entitled to qualified immunity which extinguishes liability for any and all claims in his individual capacity. It is long established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person should have known." *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *see also Tindal v. Montgomery County Commission*, 32 F.3d 1535 (1994). According to the Supreme Court in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096, *see also Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (officials "generally are shielded from liability for civil damages"); *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.1989) ("[t]he *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983.").[11]

The court finds that a grant of qualified immunity at this stage would not serve the ends of justice. The court does not voice any opinion as to whether Defendant is ultimately entitled to qualified immunity, just not at this point. Evidence and facts presently not visible could shed immense light on this action. The court is satisfied in knowing that Plaintiff's procedural due process, equal protection, and free speech claims are cognizable under the law; therefore, it is not inclined to grant Defendant qualified immunity at this juncture.

## II. Employment Discrimination Claims

### A. Title VII

Plaintiff sues Defendant in both his individual and official capacities under Title VII and the ADEA. Douglas, a forty-three-year-old Caucasian female, claims that she was the object of race and age discrimination because Evans replaced her with a younger, African-American female. Evans replaced Plaintiff on January 6, 1993, and filed a claim with the Equal Employment Opportunity Commission (hereinafter the "EEOC") on June 7, 1993, alleging race and age discrimination. Plaintiff filed her claim with the EEOC within 180 days of the alleged adverse employment decision.[12] Furthermore, the EEOC issued Douglas a letter, on April 1, 1994, granting her the right to institute this judicial proceeding, and Plaintiff amended her complaint on May 3, 1994, to include her employment discrimination causes of action. In so doing, Plaintiff consummated all administrative prerequisites and perfected her VII claim.[13]

In reverse discrimination actions, the plaintiff need not adduce evidence of direct discrimination, but, instead, may construct a prima facie case, which raises a presumption of unlawful discrimination. *See generally, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* test requires a reverse discrimination plaintiff to demonstrate: 1) that she belongs to a class; 2) that she was qualified for a job; 3) that she was removed from the job/position; and 4) that said position was filled by a minority. *See Wilson v. Bailey*, 934 F.2d 301, 304 (11th Cir.1991). Here, Plaintiff received, routinely, above average evaluations;

---

**11.** As articulated by the Eleventh Circuit:

> While qualified immunity almost always applies in damage claims against government actors in their individual capacities, the defense is a narrow one, leaving plaintiffs other avenues of relief. Plaintiffs remain free (subject to Eleventh Amendment constraints) to seek money damages against government actors in their official capacity. Plaintiffs may also seek injunctive relief.

*Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).

**12.** Title VII provides, "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful practice occurred ..." 42 U.S.C. § 2000e–5(e). *See Wilson v. Bailey*, 934 F.2d 301, 304 n. 1 (11th Cir.1991) (citing

*United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)) ("[f]ailure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit.").

**13.** Section 42 U.S.C. § 2000e–5(f)(1) provides in relevant part,

> "... if within one hundred and eighty days from the filing of [a] charge ... the Commission has not filed a civil action ... the Commission ... shall so notify the person aggrieved and **within ninety days** after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved ..."

Here, Douglas received notice from the EEOC on April 1, 1994, and amended her complaint on May 3, 1994, to include the Title VII claim.

therefore, it flows logically that she was qualified for the position. As set forth above, an African–American (female) ultimately claimed the position previously held by Plaintiff, a Caucasian. Therefore, the court concludes that Plaintiff has tendered a "short and plain" statement, pursuant to Fed. R.Civ.P. 8(a)(2), demonstrating that she is entitled to relief.

However, Plaintiff's relief against the former Attorney General is restricted to that flowing from his official capacity. The proper manner for a plaintiff to recover under Title VII is to bring an action against the employer. *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *see also Edwards v. Wallace Community College,* 49 F.3d 1517, 1520 n. 3 (11th Cir.1995); *Cross v. Alabama Department of Mental Health and Mental Retardation,* 49 F.3d 1490, 1504 (11th Cir.1995). An employer may be sued by either naming the supervisory employees as agents of the employer or by naming the employer directly. *Busby,* 931 F.2d at 772.[14] The *Busby* court explained that the relief granted under Title VII is against the employer although individual employees' action trigger the Act. *Id.* at 931 F.2d at 772 (citing *Clanton v. Orleans Parish School Bd.,* 649 F.2d 1084, 1099 & n. 19 (5th Cir.1981)).

Plaintiffs are entitled to prospective relief under Title VII for actions against state officials in their official capacity even where the state is the true party in interest. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court held that sovereign immunity did not preclude an action against a state government pursuant to Title VII of the Civil Rights Act of 1964. The *Fitzpatrick* Court reasoned that Congress applied Title VII pursuant to its power under § 5 of Amendment XIV [15] and was intended to restrict state sovereignty; therefore, congressional legislation under Amendment XIV can authorize suits directly against the states in federal courts.[16] *Fitzpatrick,* 427 U.S. at 456, 96 S.Ct. at 2671, *see also Wu,* 863 F.2d at 1550 (because "claim[s] under 42 U.S.C. § 2000e arise under Title VII of the 1964 [Civil Rights] Act, no eleventh amendment barrier exists").

## B. Section 1981

Section 1981 prohibits race discrimination in making and enforcing contracts.[17] In the landmark case of *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that the right to "make" a contract encompassed only contract formation (i.e., hiring and, in certain instances, promotions) and that the right to "enforce" contracts ensured merely equal access to legal process in contractual matters. *Patterson,* 491 U.S. at 179–80, 109 S.Ct. at 2374. The 1991 Amendments to the Civil Rights Act of 1964 (the "Act"), restored the pre-*Patterson* breadth of section 1981. The phrase "make and enforce" now encompasses and prohibits all forms of racial discrimination in: "the making, performance, modification, and ter-

---

**14.** Suits against municipalities and those against municipal officials are functionally equivalent. *Busby,* 931 F.2d at 776.

**15.** Section 1 of Amendment XIV to the Constitution provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Section 5 grants Congress the "power to enforce, by appropriate legislation" the provisions contained in Amendment XIV. U.S. Const.Amend. XIV § 5.

**16.** Justice Rehnquist, writing for the Court in *Fitzpatrick,* stated:

When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may, in determining what is "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts.

*Fitzpatrick,* 427 U.S. at 456, 96 S.Ct. at 2671.

**17.** 42 U.S.C. § 1981 provides in part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

mination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981, *see also Allen v. City of Chicago,* 828 F.Supp. 543, 560 (N.D.Ill.1993); *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1534 (D.Colo.1992).

 Section 1981 protects all persons, Caucasian and non-Caucasian alike, from racially motivated abridgements of the right to contract equally. *See Robertson v. Maryland State Department of Personnel,* 481 F.Supp. 108 (D.Md.1978). In *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994), the court held that *McDonnell Douglas's* burden-shifting analysis applies to actions brought under section 1981. As heretofore articulated, Plaintiff has sufficiently pleaded a cause upon which relief may be granted under Title VII; therefore, the court finds that Douglas' section 1981 survives Defendant's motion to dismiss.

### C. Age Discrimination

The ADEA forbids discrimination in employment on the basis of age.[18] An ADEA plaintiff must first file a claim of discrimination with the Equal Employment Opportunity Commission within 180 days after the alleged action which gives rise to the suit and then wait at least 60 days before filing a judicial action. 29 U.S.C. § 626(d)(1). Plaintiff's filing with the EEOC and ultimate institution of the above-styled judicial action were consummated within the statutorily prescribed times.[19]

 In order to establish a prima facie case of age discrimination through circumstantial evidence, a plaintiff-employee must demonstrate: (1) her membership in a protected class; (2) an adverse employment decision; (3) her qualifications for the job; and (4) her replacement by a person outside the protected class. *See Reynolds v. CLP Corp.,* 812 F.2d 671, 674 (11th Cir.1987) citing *Archambault v. United Computing Systems, Inc.,* 786 F.2d 1507, 1512 (11th Cir. 1986); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1442 (11th Cir.) *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). Plaintiff has asserted that she is a member of the class which the statute is designed to protect. In her EEOC complaint, Plaintiff states that she is forty-three years of age.[20] Furthermore, she has alleged that her age precipitated Evans's decision to remove her as Director of Consumer Utility and that the individual replacing her is significantly younger. The court finds that Plaintiff has set forth a concise statement which informs the court that, if proven, she is entitled to relief and places the Defendant on notice of the claim brought against him.

### III. State Law Actions

 Plaintiff claims that Defendant replaced her with an unclassified employee on probation status. Douglas claims that this violates *Alabama Code* (1975), §§ 36–26–10(f) and 36–26–23.[21] Defendant claims that Plaintiff does not possess a viable claim under these provisions. Moreover, Defendant avers that the provisions afford Plaintiff no express or implied right of action, and yield no cause of action for the purported violations. Defendant argues further that even if §§ 36–26–10(f) and 36–26–23 provided relief, Evans would, nonetheless, escape liability in his individual capacity as the act of which Plaintiff complains is a product of his exer-

---

**18.** Pursuant to 29 U.S.C. § 623, it is unlawful for an employer:

to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...

29 U.S.C. § 623(a)(1).

**19.** The conduct of which Douglas complains transpired on January 6, 1993. Douglas filed her EEOC charge on June 7, 1993, and then instituted the above-styled judicial action on March 15, 1994.

**20.** Section 631(a) states that the Age in Employment Discrimination Act is applicable to individuals between the ages of 40 and 70. 29 U.S.C. § 631(a), *see also Stanfield v. Answering Service, Inc.,* 867 F.2d 1290, 1294 (11th Cir.1989); *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 610 (11th Cir.1987).

**21.** Section 36–26–10(f) governs the appointment and dismissal of public officers and employees, while section 36–26–23 governs the promotion of public officials and employees.

cise of a discretionary function. Defendant offers the court no case law to substantiate these assertions; therefore, the court finds that Defendant has failed to satisfy the extremely high burden placed on Defendants moving to dismiss a complaint for failure to articulate a cause upon which the court may grant relief.

### CONCLUSION

 The Eleventh Circuit's holding in *McKinney* precludes a substantive due process claim by a state employee alleging pretextual termination; therefore, the court finds that Evans' motion to dismiss Douglas' substantive due process claim is due to be granted. However, *McKinney*'s preclusive breadth does not extend to procedural due process claims. Furthermore, the court finds that neither the *Federal Rules of Civil Procedure*, the United States Supreme Court nor the United States Eleventh Circuit Court of Appeals require heightened pleading in the context of procedural process claims. In fact, the *Federal Rules of Civil Procedure* only require heightened pleading in but two classes of cases—fraud and mistake. Therefore, Evans' motion to dismiss regarding Douglas' procedural process claim is due to be denied.

The court concludes that, based on the assumption of truth regarding the factual allegations in her complaint and amended complaint, Plaintiff may demonstrate prima facie cases of discrimination under Title VII, section 1981 and the ADEA; thus, Plaintiff has satisfied the mandate of Rule 8(a)(2) and has provided a "short and plain" statement showing that she is entitled to relief. Therefore, Defendant's motion to dismiss regarding Plaintiff's employment discrimination claims in Defendant's *official* capacity is due to be denied.

In light of *Busby*, Douglas may not maintain an employment discrimination action against Evans in his individual capacity because the employer, not the Attorney General, is the party amenable to suit. Therefore, Evans' motion to dismiss as it pertains to Plaintiff's Title VII, section 1981 and ADEA actions in Evans' individual capacity is due to be granted.

Defendant does not offer anything, other than unsupported assertions, to demonstrate that Plaintiff has failed to state a claim for relief under Alabama statutory law. Accordingly, the court finds that Defendant's motion to dismiss as it concerns Plaintiff's Alabama Code (1975) § 36–26–10(f) and/or § 36–26–23 is due to be dismissed.