United States Court of Appeals,

Eleventh Circuit

No. 96-8338.

Michael WALKER, Plaintiff-Appellee,

v.

Robert SCHWALBE, individually, and in his official capacity;
Darrell Dean, individually and in his former official capacity;
Roy Parrish, individually and in his official capacity;  David
Evans, in his official capacity only, Defendants-Appellants.

May 15, 1997.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 4:92-CV-010-HLM), Harold L. Murphy,
Judge.

Before BIRCH, Circuit Judge, and RONEY and FARRIS[*], Senior Circuit
Judges.

FARRIS, Senior Circuit Judge:

Defendants interlocutorily appeal the district court's holding

that they are not entitled to qualified immunity.  We have

jurisdiction pursuant to 28 U.S.C. § 1291.  *Mitchell v. Forsyth,*

472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (denial of

qualified immunity is immediately appealable under the collateral

order doctrine).  We affirm.

BACKGROUND

Vista Community Programs provides social services for Walker,

Chattooga, Catoosa, and Dade counties in northern Georgia.  Vista

is funded by the Walker County Board of Health through a contract

with the Georgia Department of Human Resources.  Michael Walker was

hired by Vista in 1982.  In 1986 he was promoted to supervise all

---

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the
Ninth Circuit, sitting by designation.

Vista services for the developmentally disabled. He was responsible for all budgetary issues pertaining to mental retardation programs. Throughout his career he received excellent performance reviews.

Darrell Dean was in charge of overseeing Vista as the Department of Human Resources District Health Director. In 1988 he hired Robert Wesley as Vista's Area Director and Tom Nickell as Vista's business manager. Wesley was Walker's superior at Vista.

During Wesley and Nickell's tenure, Vista budget information supplied to employees became less accurate. Walker complained to Wesley and Nickell that some budget practices violated Department regulations and prevented Walker from effectively managing the budgets for which he was responsible. After Walker and others voiced these concerns, Wesley and Nickell began to withhold budget information from Vista employees.

Walker also expressed concern to Wesley that (1) the garage Vista used to service its vehicles (chosen by Wesley without receiving bids) charged exorbitant prices and was not properly fixing the vehicles, (2) Wesley had directed all employees to have their Vista vehicles cleaned at a business run by Vista employees and their relatives, and (3) employee committees, which met during work hours, conducted fund-raising in the community to raise money allegedly for Vista but instead used the money for weekend social activities.

In July 1991 Georgia's governor directed all state agencies to submit budget reduction proposals. Walker learned that Wesley and Nickell had proposed closing Vista's Chattooga County Service

Center.  Walker urged them to reconsider because he believed the proposed closure was inconsistent with the Department of Human Resources' budget proposal request.  The defendants claim that Walker also learned that there was a proposal to cut his position.

When Walker's efforts with Wesley and Nickell failed he sought assistance from state legislators.  In August 1991 high-level Vista employees Ernest Taylor, Nora Swafford, and Walker met with several state representatives and senators.  They discussed Walker's budgetary concerns and a three-page list of "possible improprieties" at Vista.  When Walker had knowledge of a particular impropriety he shared that information.  He was primarily concerned with budget expenditures, the car wash service, and the car repair service.  Walker stated in his deposition that he never feared that Wesley's budget proposal would cost him his job because he believed he was protected by the state merit system policies.  The defendants claim that Taylor had prepared the list of improprieties and was the person primarily concerned about the improprieties, that Walker did not know about the list and was only involved to protect his job, and that the legislators already knew of these problems.

As a result of the meeting with state legislators, the Department of Human Resources began an investigation of impropriety at Vista.  David Nave conducted the investigation, assisted by Robert Schwalbe.  In October, Dean (the Department of Human Resources employee who oversaw Vista) informed Vista staff that Wesley and Nickell were being dismissed, that Dean would be assuming the responsibilities of Area Director, and that Schwalbe

would be assuming Nickell's former position. Dean delegated responsibility to Schwalbe for most daily administrative activities at Vista.

In November 1991 Nave completed the investigative report. It concluded that Vista had been mismanaged, that there had been misconduct and violations of Georgia law, and that Vista administration had shown little regard for Department policy. The report included investigations of several alleged instances of nepotism and concluded that at least one was a clear violation. The investigation and report generated a great deal of media attention in northwest Georgia. Dean ultimately resigned his position at the Department of Human Resources due to the investigation and media attention.

Some Walker County Board of Health members were upset that the legislators, not the Board, had been contacted about the improprieties. The Board was also embarrassed about the negative publicity. It considered refusing to renew the county's status as lead funding county for Vista. Members of the Board were aware that Walker was among those who had complained to the legislators.

In 1990 and 1991 Walker's wife, Crystal Walker, served as a Vista teacher consultant. Her immediate supervisor was Amanda Boyd, Director of the Walker County Service Center. Walker was Boyd's superior in the Vista mental retardation program. Prior to hiring Mrs. Walker, Walker and Boyd reviewed all available written policies regarding employment of relatives to ensure that it was permitted. Walker suggested that Boyd contact the personnel office regarding the issue. The Georgia Department of Human Resources

Administrative Policy and Procedures Manual stated that employment of relatives, which includes spouses, is not precluded, but that relatives shall not be employed in situations in which a direct superior-subordinate relationship would exist.

Walker and Boyd concluded that Mrs. Walker could be hired, and agreed that Boyd would be wholly responsible for all supervision, terms, and conditions of her employment. Walker, Wesley, and Dean each signed Mrs. Walker's contract.

Defendants have produced documents, which they allege were the applicable policies, that prohibit the employment of any relatives in an employee's entire chain of command.

After the release of the investigative report, Schwalbe met with Walker and stated that a member of the Walker County Board of Health had asked Schwalbe to review the Vista contracts with Mrs. Walker. The next day Schwalbe gave Walker a notice of proposed demotion and disciplinary salary reduction. The notice charged that Walker had violated Vista conflict of interest policies by hiring his wife. It also stated that Walker was "negligent and inefficient" for directing a subordinate to obtain approval from Walker's superior for the contract with his wife.

Walker pursued a written appeal to Dean on December 16, 1991. Dean upheld the proposed demotion and salary reduction, which amounted to almost $3,200 a year. Schwalbe and Dean each knew that Walker had been one of the employees who had spoken with the legislators. On December 19 Dean informed Walker he would be transferred to another Vista center forty miles from his home. Walker later applied for a promotion to his previous position but

was denied without an interview. He subsequently abandoned his career at Vista. Defendants presented evidence that other Vista employees were disciplined for violating anti-nepotism policies.

After the meeting with the legislators, Taylor (the Vista employee who had prepared the list of improprieties) was removed from the management team at Vista and placed under the authority of one of his subordinates. After the investigation, Swafford (the third Vista employee who met with the legislators) was removed from the management team at Vista and transferred from the office where she had worked for twelve years. No justifications were given for these actions.

Walker filed suit under 42 U.S.C. § 1983 against Schwalbe and Dean for violating his right to First Amendment speech by demoting him in retaliation for his conversation with the legislators. Defendants moved for summary judgment. The district court held that Walker had established a genuine issue of material fact that he was demoted in retaliation for his speech and that the defendants were therefore not entitled to a ruling of qualified immunity prior to trial. The defendants appeal interlocutorily.

DISCUSSION

*QUALIFIED IMMUNITY*

A. *Standard of Review*

A district court's ruling that an official's conduct violated clearly established law so that the official is not entitled to a ruling of qualified immunity prior to trial is reviewed de novo. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985); *Johnson v. Clifton,* 74 F.3d 1087, 1090 (11th

Cir.), *cert. denied sub nom Hill v. Clifton,* --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996).

B. *Method of Review*

A defendant may interlocutorily appeal a district court's holding that he is not entitled to qualified immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985). Where this occurs there are effectively two issues on appeal: (1) whether the district court's holding that a genuine issue exists as to what conduct the official engaged in was correct, and (2) whether the official is entitled to qualified immunity for that conduct. The first issue is factual, the second legal. *Johnson v. Jones,* --- U.S. ----, ---- - ----, 115 S.Ct. 2151, 2156-59, 132 L.Ed.2d 238 (1995).

Where, as here, the defendants contest the district court's legal holding, we may also consider the factual issue because it is part of the core qualified immunity analysis. *Johnson v. Clifton,* 74 F.3d at 1091. We do so, and "simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Id.; see Cooper v. Smith,* 89 F.3d 761, 762 (11th Cir.1996) (in most qualified immunity interlocutory appeals the appellate court accepts the facts that the district court assumed).

C. *Genuine Issue of Material Fact as to Defendants' Conduct*

We analyze First Amendment retaliatory demotion claims under a four-part test: (1) whether the employee's speech involves a matter of public concern, (2) whether the employee's interest in speaking outweighs the government's legitimate interest in

efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision, and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1563-64 (11th Cir.1995) (citing *Bryson v. City of Waycross,* 888 F.2d 1562, 1565-66 (11th Cir.1989)).

First, we examine the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern. *Bryson,* 888 F.2d at 1565. Viewing the evidence in the light most favorable to Walker, Walker spoke with the legislators because he was concerned with how Vista funds were being spent. "[A] core concern of the first amendment is the protection of the "whistle-blower' attempting to expose government corruption." *Id.* at 1566. Walker spoke at a meeting with elected public officials about improving the services Vista provides to the public. His speech was on a matter of public concern.

Second, Walker had a significant interest in speaking with the legislators in order to prevent harm to the Vista program and the community it serves. Defendants argue they have a significant interest in enforcing the anti-nepotism policy. This is beside the point. The issue is whether the government has an interest in preventing the speech. Whether the government had valid reasons for its actions is only relevant to the third part of the test. Defendants have no legitimate reason for preventing Walker's speech. The second element of the *Bryson* test is satisfied.

Third, an employee's initial burden to demonstrate that a

retaliatory intent was a substantial factor behind the government's employment decision is not a heavy one. *Beckwith,* 58 F.3d at 1565. Walker has produced evidence that Dean had a motive to retaliate against Walker because his speech led to the investigation that led to Dean's resignation. The investigation embarrassed members of the Walker County Board of Health. The Board asked Schwalbe to investigate Mrs. Walker's contract. Schwalbe had a motive to retaliate because he answered to Dean and the Board.

There is a genuine issue as to which nepotism policy was in effect when Mrs. Walker was hired. Viewing the evidence in a light most favorable to Walker, he did not violate any applicable policy. Even if the broader anti-nepotism policy was in effect, Walker still received a severe penalty where it appears he did everything he could to make sure he was acting within Vista regulations. In addition, the second of the two reasons given for the demotion, that Walker was "negligent and inefficient" for having a subordinate check with a superior about the proper regulations, is illogical considering the situation. Walker may well have been attempting to make sure that there was no actual impropriety and no appearance of it, but we do not resolve questions of fact.

Finally, adverse employment actions were also taken against Taylor and Swafford, the other two Vista employees who met with the legislators. From this evidence a factfinder could reasonably conclude that the people who spoke with the legislators were punished for doing so.

Defendants have presented credible evidence that Walker only talked with the legislators out of concern for his own job and that

he was only fired for violating the anti-nepotism policy.  However, viewed in the light most favorable to Walker, there is a genuine issue of material fact as to whether his speech played a substantial role in his demotion.  Walker has satisfied the third element of the *Bryson* test.

Fourth, reasonable inferences from the same evidence also create a genuine issue as to whether the defendants would have taken the same action had Walker not spoken out.

The district court properly concluded that the circumstantial and direct evidence produced by Walker satisfied his burden of creating a genuine issue of material fact that he was demoted in retaliation for his speech.

D. *Qualified Immunity*

Even though Walker has established a genuine issue of material fact, the defendants may be protected from liability by the doctrine of qualified immunity.  Qualified immunity "protects government officials ... from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known.' "  *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

"When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important.  The facts need not be the same as the facts of the immediate case.  But they do need to be materially similar."  *Lassiter,* 28 F.3d at 1150 (quoting *Adams v. St. Lucie County*

*Sheriff's Dept.,* 962 F.2d 1563, 1573, 1575 (11th Cir.1992) (Edmonson, J., dissenting), *approved en banc,* 998 F.2d 923 (11th Cir.1993)). Qualified immunity focuses on the actual, specific details of concrete cases. *Lassiter,* 28 F.3d at 1149-50. Plaintiffs may not discharge their burden by referring to general rules and abstract rights. *Id.* at 1150. "Only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated "clearly established' federal rights." *Hansen v. Soldenwagner,* 19 F.3d 573, 576 (11th Cir.1994).

Defendants contend that the qualified immunity doctrine requires an objective analysis that does not consider a defendant's state of mind. Therefore, defendants argue, they are entitled to qualified immunity because Walker's violation of the anti-nepotism policy was an objectively valid reason to demote him, and the defendants' subjective, allegedly retaliatory, intent in doing so is irrelevant. *See id.* at 578 (subjective motivation of officials is irrelevant to whether qualified immunity exists).

Defendants are correct that there is generally no subjective component to qualified immunity analysis and that the test is based on objective legal reasonableness. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987); *Lassiter,* 28 F.3d at 1150. However, in the cases that held there should not be subjective analysis, the official's state of mind was not an essential element of the underlying constitutional violation. *Tompkins v. Vickers,* 26 F.3d 603, 607-08 (5th Cir.1994). Where the official's state of mind is an essential

element of the underlying violation, the state of mind must be considered in the qualified immunity analysis or a plaintiff would almost never be able to prove that the official was not entitled to qualified immunity.

We hold, as every Circuit that has considered this issue has held, that where subjective motive or intent is a critical element of the alleged constitutional violation the intent of the government actor is relevant. *See Tompkins,* 26 F.3d at 608 (5th Cir.) (subjective intent must be considered in qualified immunity analysis where the official's motive or intent is a critical element of the constitutional violation); *Branch v. Tunnell,* 937 F.2d 1382 (9th Cir.1991) (same); *Siegert v. Gilley,* 895 F.2d 797 (D.C.Cir.1990) (same), *aff'd on other grounds,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Pueblo Neighborhood Health Centers v. Losavio,* 847 F.2d 642 (10th Cir.1988) (same); *Poe v. Haydon,* 853 F.2d 418 (6th Cir.1988); *Musso v. Hourigan,* 836 F.2d 736 (2d Cir.1988) (same); *see also Ratliff v. DeKalb County,* 62 F.3d 338, 341 (11th Cir.1995) (subjective intent is relevant to qualified immunity analysis if discriminatory intent is a specific element of the constitutional tort).

The government official's state of mind is a critical element in First Amendment retaliatory demotion claims. It must be considered in this case. Because Walker has established a genuine issue of material fact as to retaliation, it must be assumed at this stage that the defendants did retaliate against him for his speech.

At the time the defendants acted in 1991, clearly established

law informed reasonable government officials that Walker could not be punished for his First Amendment speech. *See Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (criticism of Board of Education by employee for its allocation of school funds is a matter of public concern and protected by the First Amendment); *Bryson,* 888 F.2d at 1566 (1989) (core concern of First Amendment is protection of whistle-blower attempting to expose government corruption). The facts of these cases are materially similar to the instant case. *Lassiter,* 28 F.3d at 1150. The law against retaliation for exercise of First Amendment rights was clearly established.

Defendants argue that denial of qualified immunity here would be equivalent to the court's holding that once an employee has engaged in First Amendment speech he may no longer be punished for valid reasons. This argument misses the point. An employee may still be punished for valid reasons. However, when the employee can establish a genuine issue of material fact that the true reason for the punishment was actually the speech, then the case must go to trial.

Defendants spend a substantial portion of their briefs arguing that they are entitled to qualified immunity because there is no clearly established law that a demotion for violation of an anti-nepotism policy violates a person's rights. This argument is inapposite. Walker has established a genuine issue that he was demoted in retaliation for his speech. The qualified immunity analysis is therefore made under the assumption that he was demoted for this reason.

A reasonable Vista official could not have thought that he could retaliate against Walker for exercising his First Amendment speech rights. Further, a reasonable official could not have thought that he could retaliate against Walker for exercising his rights under the guise of the anti-nepotism policy.

AFFIRMED.

RONEY, Senior Circuit Judge, concurring:

I concur. When the defendants first moved for qualified immunity, the district court denied it as untimely. On appeal, a panel of this Court issued a *writ of mandamus* directing the district court to rule prior to trial on defendants' defense of qualified immunity. The district court responded by deciding that the defendants are not entitled to qualified immunity on this record. It seems to me that we have jurisdiction and the responsibility to decide, prior to trial, whether the district court properly denied that motion. Even if we do not, no harm is done. The trial would continue either way. I understand Judge Farris's opinion as deciding only an issue of law, squarely presented by the motion for qualified immunity, and although evidentiary and factual issues may have been argued on this appeal, the affirmance by this Court does not hinge on a resolution of those factual issues.

BIRCH, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's determination that the speech at issue in this case fairly may be characterized as constituting speech on a matter of public concern. I therefore concur in the majority's conclusion that the facts presented, viewed in the light

most favorable to the plaintiff, sufficiently establish an underlying First Amendment claim.  I believe, however, that we lack jurisdiction to review the remaining—and more fundamental—argument advanced by the defendants on the issue of qualified immunity.  For this reason, I respectfully dissent from that portion of the majority's decision discussing and concluding that the defendants are not entitled to qualified immunity with respect to Walker's retaliation claim.

The Supreme Court most recently articulated the jurisdictional underpinnings of an interlocutory appeal based on qualified immunity in *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) and *Behrens v. Pelletier,* --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).  In *Johnson,* although the defendants appealed the denial of their summary judgment motion based on the assertion of a qualified immunity defense, the Supreme Court found that they had failed to raise the purely legal question of qualified immunity—that is, whether, viewing the facts in the light most favorable to the plaintiff, the law was clearly established that the defendants violated the plaintiff's constitutional right.  Rather, the Court found that the only issue on appeal was whether the record thus far supported the plaintiff's claim that the defendants had engaged in the conduct of which the plaintiff accused them.  The district court had found this factual issue to be in dispute.  The Court concluded that, although this factual issue arose in the context of qualified immunity, it nonetheless was nothing more than a question of evidentiary sufficiency, "i.e. which facts a party may, or may not, be able to

prove at trial," *Johnson,* --- U.S. at ----, 115 S.Ct. at 2156, and as such was not an appealable, final order. In reaching its decision, the Court noted that " "a qualified immunity ruling ... is ... a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case.' " *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 530 n. 10, 105 S.Ct. 2806, 2817 n. 10, 86 L.Ed.2d 411 (1985)) (omissions in original). The Supreme Court subsequently clarified*Johnson* in *Behrens v. Pelletier,* --- U.S. ----, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Although *Behrens* concerned primarily the propriety of multiple interlocutory appeals on the issue of qualified immunity, the Court explained:

> *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is not a "final decision".... *Johnson* reaffirmed that summary-judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issue of law" relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was "clearly established."

*Behrens,* --- U.S. at ----, 116 S.Ct. at 842 (citations and brackets omitted). Bearing in mind the language of *Johnson,* our court has been careful to construe narrowly our jurisdiction over interlocutory appeals involving the qualified immunity question. *See, e.g., Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir.) ("[T]he factual issue ... can only be heard because it is a necessary part of the core qualified immunity analysis, the resolution of which constitutes a final, collateral order; when

the core qualified immunity issue is not appealed, then the factual issue may not be either."), *cert. denied,* --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996); *Ratliff v. DeKalb County,* 62 F.3d 338, 341 (11th Cir.1995) ("[W]e decline to review the denial of summary judgment on [the] ground ... [that] the district court in considering defendant's motions assumed erroneous facts or assumed facts which were unsupported by the evidence in the record.").

The defendants submit that they demoted Walker for violating a state anti-nepotism policy; according to the defendants' version of events, the fact that Walker also may have exercised his rights under the First Amendment (which they dispute) is irrelevant and coincidental. In my view, the defendants do not posit the question of whether, assuming that the defendants did fire Walker for engaging in protected activity, the defendants are entitled nonetheless to qualified immunity; rather, the defendants ask that we assume all facts as the defendants allege them to be and find, on that basis, that their conduct did not violate any clearly established law. I believe that we do have jurisdiction to determine whether the district court's factual findings support the defendants' factual contention that Walker violated a valid anti-nepotism policy in place at the time these events transpired.[1]

---

[1]It is worth noting that our circuit precedent is not entirely clear regarding the extent to which we may conduct independent factual review of disputed issues of fact in an interlocutory appeal based on qualified immunity. *Compare Ratliff v. DeKalb County,* 62 F.3d at 341 ("[W]e decline to review the denial of summary judgment on [the] ground ... [that] the district court in considering defendant's motions assumed erroneous facts or assumed facts which were unsupported by the evidence in the record.") with *Cottrell v. Caldwell,* 85 F.3d 1480, 1486 (11th Cir.1996) ("In exercising our interlocutory review jurisdiction in qualified immunity cases, we are not

Moreover, were we to find conclusive evidentiary support for the defendants' version of the facts in this case, our circuit precedent suggests that we could exercise jurisdiction to resolve the question presented by the defendants regarding qualified immunity. This is not the circumstance presented here. The district court found a predicate fact to be in dispute—that is, the court found a question of fact to exist as to what specific state regulation governing VISTA employees was in place at the time Walker acted; we have not found that the district court erred with respect to this finding. I do not believe that the posture of this case as it has been framed by the defendants permits us to "assume" either that Walker did, in fact, violate a state law or that the defendants demoted him solely for asserting his right to free speech. As a result, we cannot evaluate properly the extent to which the application of materially similar facts to the law might have clearly established that the defendants' conduct violated (or did not violate) Walker's constitutional rights.

The defendants offer no justification for violating Walker's First Amendment right on the basis that Walker's exercise of that right affected their ability to "promote the efficiency of the public services [the state] performs," *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989), because they contend that they demoted him for an entirely different reason—i.e. the violation of a valid state anti-nepotism policy. Indeed, the defendants do not

---

required to make our own determination of the facts for summary judgment purposes; we have the discretion to accept the district court's findings if they are adequate. But we are not required to accept them") (citations and quotation omitted).

argue in this appeal that, viewing the facts in the light most favorable to the plaintiff, they nonetheless are entitled to qualified immunity. Rather, the defendants argue, in essence, that viewing the facts as the defendants allege them to be, they had another legitimate reason for demoting Walker, separate and apart from any First Amendment concerns. Because there is no conclusive support for the defendants version of the facts, the defendants' challenge effectively requires that we decide a factual issue—whether there is conclusive foundation to confirm the defendants' contention that Walker did violate state law—based neither on the record nor the drawing of reasonable inferences based on facts previously found. In my opinion, this type of purely factual decision-making is not the proper subject of an interlocutory appeal based on qualified immunity.[2]

This is not to say that we may never exercise jurisdiction whenever the underlying intent of a state actor is intertwined with the issue of qualified immunity; indeed, our circuit precedent holds otherwise. *See, e.g., McMillian v. Johnson,* 88 F.3d 1554, 1566 (8th Cir.1996) ("[W]e have held that intent or motivation may not be ignored when intent or motivation is an essential element of the underlying constitutional tort.... When [defendants'] purpose to punish [the plaintiff] is considered, there is no question that

[2]*See also Carnell v. Grimm,* 74 F.3d 977, 979 (9th Cir.1996) ("[I]nsofar [as] a genuine issue of material fact exists for trial, namely whether Carnell informed the officers that she had been raped, we conclude that we do not have jurisdiction [under *Johnson v. Jones,* --- U.S. ----, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ] to address that issue. And the resolution of that disputed issue of fact impacts the question whether reasonable officials could have believed their conduct ... was lawful in light of the circumstances") (citation omitted).

their conduct violated clearly established law.")  The question of how to reconcile the subjective component of the intent determination often implicated in a discrimination action with the objective nature of qualified immunity was most recently addressed in *Foy v. Holston,* 94 F.3d 1528 (11th Cir.1996).  *Foy* involved the state's removal of two children from a religious community to foster care.  The plaintiffs claimed the state's conduct was motivated by religious discrimination;  the state proffered evidence to show that the children were being mistreated. Acknowledging that the discriminatory-intent element "can cloud the question of whether the official acted lawfully or unlawfully in the circumstances,"  *id.* at 1534, we held that the defendants nonetheless were entitled to qualified immunity:

> One trigger to the doctrine's application depends upon whether the record establishes that the defendant, in fact, did possess a substantial lawful motive for acting as he did act. At least when an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field even at the summary judgment stage....  Where the facts assumed for summary judgment purposes in a case involving qualified immunity show mixed motives (lawful *and* unlawful motivations) and pre-existing law does not dictate that the merits of the case must be decided in plaintiff's favor, the defendant is entitled to immunity.
>
> ... [T]he record does show Defendants had, in fact, cause to understand that [a child] was possibly being mistreated. The record also shows Defendants were, in fact, aware of information that would warrant investigation of other children....
>
> ....
>
> ... Because, given the circumstances and the state of the law, a reasonable child custody worker could have considered Defendants' conduct arguably proper even if Defendants were motivated in substantial part by unlawful motives, Defendants' conduct was objectively reasonable for the purposes of qualified immunity.

*Foy,* 94 F.3d at 1534-35.  In *Foy,* unlike this case, "the record, in

fact, show[ed] substantial lawful intent, while not ruling out some unlawful intent, too." *Id.* at 1535 n. 9.  Moreover, even assuming that the defendants in *Foy* acted with some discriminatory animus, the law did not clearly establish that a reasonable social worker faced with evidence of child abuse should not act to remove a mistreated child from the abusive environment.  These factors critically distinguish *Foy* from the instant action;  here, the record does not show conclusively that the defendants possessed, at least in part, a lawful motive for their conduct. [3]  Stated

---

[3]Again, I note that our precedent is ambiguous regarding the correct analytical framework in a qualified-immunity context when intent is an element of the cause of action.  *Compare McMillian,* 88 F.3d 1554, in which the court assumed, for purposes of qualified-immunity analysis, that the defendants possessed an intent to punish the plaintiff, regardless of possible evidence of a lawful motive on the part of the defendants, with *Foy,* 94 F.3d at 1534-35 ("[W]hen an adequate lawful motive is present, that a discriminatory motive might also exist does not sweep qualified immunity from the field ... Unless it, as a legal matter, is plain under the specific facts and circumstances of the case that the defendants' conduct—despite his having adequate lawful reasons to support the act—was the result of his unlawful motive, the defendant is entitled to immunity.").

There are other contexts in which the role of evidence of subjective intent of a state actor complicates the qualified-immunity question.  Some courts have found, for instance, that a finding of a genuine issue of fact with respect to a defendant's subjective intent necessarily precludes entitlement to qualified immunity when the claim advanced is deliberate indifference to medical needs under the Eighth Amendment.  *See, e.g., Weyant v. Okst,* 101 F.3d 845, 858 (2nd Cir.1996) ("[W]hether it was reasonable for the officers to believe their actions met the standard set by those principles depends on whether one believes their version of the facts.  That version is sharply disputed, and the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law.");  *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir.) (stating as follows:

The doctors further argue that Jackson failed to show a genuine issue of material fact as to whether they were deliberately indifferent, in fact, to his medical needs.  As to that question

differently, because the record does not reveal definitively that Walker violated a valid state anti-nepotism policy at the time the relevant events occurred, it also does not explicitly show that the defendants could have demoted Walker, at least in part, for violating this policy. Indeed, because we cannot discern conclusively at this juncture whether the defendants had some lawful justification for their decision to demote Walker, we do not know whether there exists an application of materially similar facts to law that may or may not have placed the defendants on notice that their conduct violated a clearly established right; in other words, we cannot decide the core qualified immunity question. For this reason, I believe that it is inappropriate to reach the remaining issue raised in this appeal.

---

> we lack jurisdiction.... It is a question reviewable after trial. We are instructed by the Supreme Court [in *Johnson v. Jones* ] that appellate jurisdiction is lacking.... Given the district court's determination that there is a triable issue as to deliberate indifference, the doctors were not entitled to summary judgment on the ground that they could reasonably believe their conduct did not violate clearly-established law.

*cert. denied,* --- U.S. ----, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996) (citations omitted)). The claim of deliberate indifference obviously is not at issue in this case. An examination of this claim does serve to highlight, however, the unsettled state of the law as it pertains to the court's basis for jurisdiction—as well as its analytical approach—in qualified-immunity cases when subjective intent is raised as a disputed predicate question of fact.