J.R. BRYSON, Plaintiff–Appellant,
Cross–Appellee,

v.

CITY OF WAYCROSS, C.B. Heys, W.
Lynn Taylor, Defendants–Appellees,
Cross–Appellants.

No. 88–8888.

United States Court of Appeals,
Eleventh Circuit.

Nov. 30, 1989.

Rehearing and Rehearing In Banc
Denied Jan. 11, 1990.

Fletcher Farrington, Savannah, Ga., for plaintiff-appellant, cross-appellee.

David C. Will, Dickey, Whelchel, Brown & Readdick, Brunswick, Ga., Neal L. Conner, Jr., Mary Jane Cardwell, Kopp, Peavy and Conner, P.C., Waycross, Ga., for defendants-appellees, cross-appellants.

Before HATCHETT and CLARK, Circuit Judges, and HILL, Senior Circuit Judge.

HATCHETT, Circuit Judge.

By applying the criteria set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), we affirm the district court's ruling that a police officer's statements regarding the

activities of the police chief were matters of public concern, but not speech protected by the first amendment to the Constitution; consequently, adverse personnel actions could lawfully be taken against the police officer.

## I. FACTS

In November, 1987, Police Captain J.R. Bryson, an officer with twenty-three years service on the Waycross, Georgia police force, filed a Memorandum of Complaint ("the complaint") with the city manager, C.B. Heys, alleging that Police Chief W. Lynn Taylor had stolen whiskey from the police department evidence room in 1980. Heys investigated this complaint and other verbal complaints Bryson made about the Chief's improprieties and decided the complaints were unfounded. In February, 1988, Chief Taylor relieved Bryson of his command and reassigned him to perform duties that Bryson alleges were less significant. After reassignment, Bryson received the same salary, but no longer was allowed use of a police department automobile. During this time, Bryson openly investigated Chief Taylor by interrogating members of the police force and tape-recording conversations.

## II. PROCEDURAL HISTORY

On February 11, 1988, Bryson filed this action under 42 U.S.C. § 1983 claiming that his reassignment was in retaliation for the complaint, in violation of his first amendment rights to freedom of expression. The lawsuit named the City of Waycross, Georgia, City Manager C.B. Heys, and Chief of Police W. Lynn Taylor as defendants ("the city"). The city answered that it transferred Bryson for failing to adequately perform his duties and disrupting department operations. In May, 1988, Chief Taylor placed Bryson on administrative leave and filed eight administrative charges, seeking the termination of Bryson's employment. In June, 1988, the district court granted Bryson's motion to amend his complaint to allege that the May employment charges against him were brought in retaliation for the lawsuit. The district court denied Bryson's motion to add equal protection and other constitutional claims, holding that to do so would "unduly prejudice the defendants."

At the close of Bryson's case, the district court determined that the filing of the complaint and the lawsuit were matters of public concern. At that time, the city moved for a directed verdict based on the balancing test between free speech rights and governmental efficiency announced in *Pickering v. Board of Education.* The city argued that Bryson was reassigned for failure to adequately perform his duties and disruptive behavior, and that the employment charges brought against Bryson in May, 1988, also were based on misconduct. The district court denied the city's motion, delaying application of the *Pickering* balancing test until the close of all the evidence. The district court submitted a special verdict form to the jury.[1]

At the close of all the evidence, the district court ruled in favor of the city based on its independent application of the *Pickering* test.

## III. CONTENTIONS OF THE PARTIES

Bryson contends that the district court erred by setting aside the jury's finding of causation and substituting its own findings of credibility in conducting the *Pickering* balancing test. Bryson also contends that the district court abused its discretion in denying his motion to amend the complaint with claims based on equal protection.

The city contends that the jury's finding of causation did not bind the district court. The city argues that the district court's

---

[1] The jury answered three special questions, finding that: (1) either the complaint or the filing of this lawsuit was a substantial or motivating factor either in the decision to reassign Bryson or in the decision to bring employment charges against him; (2) absent Bryson's complaint or lawsuit, these adverse employment actions would not have been taken against him; and (3) the city's interest in efficient operation of the police force did not outweigh Bryson's first amendment rights. The jury awarded Bryson $31,000 in actual damages and $4,000 in punitive damages.

duty under *Pickering* is to decide the question of causation without help from the jury, and that the jury's findings were merely advisory. The city also contends that the district court did not abuse its discretion in denying Bryson's motion to add an equal protection claim to his complaint.

As cross-appellant, the city contends that the district court erred by denying its motion for a directed verdict as to the liability of the city and city manager. The city argues that Bryson did not sufficiently allege that the employment actions taken against him were officially ordered or a matter of city policy, or that the city manager had "final policy making authority" as required by *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The city also contends, on cross-appeal, that the district court erred in denying the city's motion *in limine* to exclude evidence of the alleged liquor theft.

## IV. ISSUES

The parties argue four issues: (1) whether the district court properly applied the *Pickering* test; (2) whether the district court erred in denying Bryson's motion to amend his complaint to include an equal protection claim; (3) whether the district court erred in denying the city's motion for directed verdict on the issue of municipal liability; and (4) whether the district court abused its discretion in denying the city's motion *in limine* regarding the alleged liquor theft. Because of our holding on issues one and two, we do not decide issues three and four.

## V. DISCUSSION

### A. The *Pickering* Issue

■ Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute. *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). In *Pickering*, the landmark case concerning a public employee's first amendment rights, the Supreme Court held that a public employee's interests are limited by the state's need to preserve efficient governmental functions.

> [T]he state has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734–35.

■ In cases where the state denies discharging the employee because of speech, a four-stage analysis has evolved. *See generally Kurtz v. Vickrey*, 855 F.2d 723 (11th Cir.1988). At the first stage, the court determines the threshold issue raised in *Pickering*, whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Rankin*, 483 U.S. at 384, 107 S.Ct. at 2896–97 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983)). The court examines the content, form, and context of the employee's speech to determine whether it addresses a matter of public concern. *Rankin*, 483 U.S. at 384–85, 107 S.Ct. at 2897. Second, if the speech addresses a matter of public concern, the court then applies the second prong of *Pickering*, the balancing test, weighing the employee's first amendment interests against "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731. Again, the context and circumstances of the employee's speech must be considered. *Rankin*, 483 U.S. at 388, 107 S.Ct. 2898. If the public employee prevails on the balancing test, the fact-finder determines whether the employee's speech played a "substantial part" in the government's decision to demote or discharge the employee. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50

L.Ed.2d 471 (1977). Fourth, if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that "it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 576. This fourth stage has been referred to as a "but for" test; the employer must show that "its legitimate reason, standing alone, would have induced it to make the same decision." *Price Waterhouse v. Hopkins,* — U.S. —, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989).

The district court satisfied the first stage of this analysis by finding that Bryson's speech addressed a matter of public concern. Bryson's initial complaint to the city manager alleged corruption within the city police department. As the district court noted, a core concern of the first amendment is the protection of the "whistle-blower" attempting to expose government corruption. The district court also found that the first amendment protected Bryson's filing of this lawsuit pursuant to the right to petition for redress of grievances.

■■■ The district court independently evaluated the *Pickering* balancing test and ruled in favor of the city.[2] As part of the circumstances surrounding Bryson's speech, the court considered evidence of disruptive speech and behavior proffered by the city as legitimate reasons for Bryson's demotion. Bryson contends that the district court erred by adding these nonprotected instances of speech into the equation. Resolution of this issue requires us to determine what factors a district court should weigh against the protected speech in the *Pickering* balancing test.

■■■ This court recently visited the *Pickering* balancing test in *Morales v. Stierheim,* 848 F.2d 1145 (11th Cir.1988) *cert. denied sub nom. Leon v. Avino,* — U.S. —, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989). The Office of Community and Economic Development (OCED) assigned Morales, an agency planner, to develop plans to bring federal money into the Melrose, Dade County, Florida neighborhood. The Melrose Community Advisory Board is a citizen group concerned with development issues. In 1985, OCED reassigned Morales from the Melrose area because of his inability to work with Raymundo Barrios, the chairman of the advisory board. On more than one occasion Morales confronted Barrios, calling him a "hypocrite" and a liar. As in this case, the district court found the statements to be matters of public concern and submitted the causation questions to the jury. The jury found that Morales's protected speech was the substantial motivating factor in the decision to reassign him, and that he would not have been reassigned in the absence of those statements. The district court subsequently entered judgment for Morales.

This court reversed. The court agreed that Morales's statements were made in defense of his department's community development work, and therefore, the statements related to matters of public concern. "In making these accusations, Morales was clearly concerned with bringing to light an 'actual or potential wrongdoing or breach of public trust' by Barrios." *Morales,* 848 F.2d at 1149. The court based its reversal on its independent review of the *Pickering* balancing test. *Connick v. Myers,* 461 U.S. 138, 150 n. 10, 103 S.Ct. 1684, 1691–1692 n. 10, 75 L.Ed.2d 708 (1983) (*Pickering* balancing test a question of law).

2. In the special verdict form, the jury was asked to answer the question presented in the *Pickering* balancing test, i.e., whether Bryson's interest in free speech is outweighed by the state's interest in the efficient functioning of the police department. The jury found that Bryson's interests were paramount. The district court correctly determined, however, that the jury findings on the *Pickering* balancing test were only advisory. *See Morales v. Stierheim,* 848 F.2d 1145 (11th Cir.1988) *cert. denied sub nom. Leon v. Avino,* — U.S. —, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989).

The court determines the *Pickering* balancing test on motion for directed verdict or at the close of all the evidence. In cases where the public employee prevails on the *Pickering* balancing test which is a question of law, the jury then determines the causation and damages issues.

We must consider several factors in balancing the state's interest in efficient provision of public services against Morales's speech interest, including: (1) whether the *speech at issue* impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made. *Connick*, 461 U.S. at 151–55, 103 S.Ct. at 1692–94; *Ferrara*, [*v. Mills*] 781 F.2d [1508] at 1513 [(11th Cir.1986)].

*Morales*, 848 F.2d at 1149 (emphasis added). Examining the case under these three criteria, the court found that Morales's speech on matters of public concern "so severely impeded his own effectiveness and the effectiveness of OCED in the Melrose area that the governmental interest at stake in this case clearly outweighs Morales's speech interest."

Our weighing of the *Pickering* balancing test, using the three *Morales* criteria, leads us to agree with the district court and find that Bryson's speech was so disruptive of the Waycross Police Department that the city's interest in assuring efficient police protection outweighs Bryson's speech interest. In considering whether Bryson's speech impeded the city's ability to perform its duties efficiently, we examine "whether the statement impairs discipline by superiors or harmony among co-workers, [or] has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary." *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2898. Bryson's bitter complaints to all who would listen in the police department and his active investigation of Chief Taylor severely undermined the morale of the police department. Some officers even avoided the police station because of Bryson's animosity toward the chief. According to several witnesses, Bryson's conduct substantially interfered with police department operations.

Bryson's speech would have been found protected had he confined his complaint to the proper time, place, and manner. In *Waters v. Chaffin*, 684 F.2d 833 (11th Cir. 1982), we held that a police officer could not be demoted for calling the police chief a "bastard" and a "son-of-a-bitch" where the

officer was off duty and communicating privately with a friend. Bryson, however, chose to spend police department time broadcasting his rancor. Although Bryson could not have been lawfully demoted or terminated for expressing his displeasure with the chief under the proper circumstances, his speech was not protected when it disrupted the efficient functioning of the police department. The evidence also indicates that Bryson had become increasingly dissatisfied with personnel decisions the chief of police made during the prior two or three years. A favorable job assignment he desired had recently been given to another officer. Therefore, the context of Bryson's speech concerns an ongoing personnel dispute, and "additional weight must be given to the supervisor's view that the employee has threatened the authority of the employer to run the office." *Connick*, 461 U.S. at 153, 103 S.Ct. at 1693.

■ The *Pickering* balancing test is not performed in a vacuum. *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2897. We find, therefore, that the district court properly considered the circumstances surrounding Bryson's statements.

### B. Other Issues

Because we hold that Bryson's speech is not protected under the *Pickering* test, we need not reach the issues of municipal liability and admissibility of evidence.

■ The remaining issue is whether the district court abused its discretion by denying Bryson's motion to amend the complaint with an equal protection claim. Leave to amend may be denied where the opposing party would be unduly prejudiced by allowance of the amendment. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The court specifically found that the city would be prejudiced if the amendment were allowed. Because we cannot say that the allowance of an entirely different theory of the case during the last week scheduled for discovery would not unduly prejudice the city, we hold that the district court did not abuse its discretion by denying the motion to amend.

## CONCLUSION

In summary, we hold that the district court did not err either in considering the circumstances surrounding Bryson's speech, or in denying Bryson's motion for leave to amend. Although we note that the district court expressed reluctance and regret in ruling against Bryson because he found that "a cursory examination of the defendant's dubious actions in this case reveals an unsavory portrait of the Waycross Police Department," the judgment is affirmed.

AFFIRMED.