Linda J. TINDAL, Plaintiff–Appellee,

v.

MONTGOMERY COUNTY COMMISSION; Commissioners Mack O. McWhorter; Frank A. Bray; W.F. Joseph, Jr.; John F. Knight, Jr. and Lynn A. McGowan, individually and in their official capacities, Defendants–Appellants,

The Montgomery County Sheriff's Department, Defendant,

M.S. Butler, individually; Dan Jones, individually and as Sheriff of Montgomery County Sheriff's Department, Defendants–Appellants,

City and County of Montgomery Personnel Department; A, B, C, fictitious defendants, Defendants.

No. 92–7076.

United States Court of Appeals, Eleventh Circuit.

Sept. 27, 1994.

Tyrone C. Means, Kenneth L. Thomas, Cynthia W. Clinton, Launice P. Sills, Montgomery, AL, for appellants.

Fern Singer, Marion F. Walker, Birmingham, AL, for appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and MERHIGE *, Senior District Judge.

TJOFLAT, Chief Judge:

This appeal presents the following issue: whether Montgomery County, Alabama, Sheriff Dan Jones and former Sheriff M.S. Butler are entitled to qualified immunity with respect to two damages claims Linda J. Tindal has brought against them in their individ-

ual capacities. Tindal claims that Jones and Butler terminated her employment (1) arbitrarily and capriciously (in violation of her Fourteenth Amendment right to substantive due process) and (2) in retaliation for her testimony against former Sheriff Butler in a suit charging him with sex and race discrimination (in violation of the First Amendment). Jones and Butler jointly moved the district court for summary judgment based on a defense of qualified immunity; the district court denied their motion. This appeal followed.[1]

We find that an intervening decision of this court, *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) *(en banc),* forecloses Tindal's substantive due process claim; accordingly, we reverse the district court's disposition of that claim as to both Jones and Butler. As to Tindal's First Amendment claim, we reverse the district court's denial of. qualified immunity as to Jones because the record contains no evidence indicating that he participated in the decision to terminate Tindal's employment;[2] we affirm, however, the district court's denial of qualified immunity as to Butler.

I

In June 1981, Butler, then Sheriff of Montgomery County, hired Tindal as a communications dispatcher. She was still in that position in August 1988 when she executed an affidavit in a race and sex discrimination suit on behalf of some of Sheriff Butler's employees who had brought suit against him in federal district court. In February 1989, when the case went to trial before a jury, Tindal testified, under the plaintiffs' subpoena, as to the working environment in the Sheriff's office. Following the conclusion of her testimony, the trial judge admonished

---

* Honorable Robert R. Merhige, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. We have jurisdiction to review the district court's summary judgment order rejecting the defense of qualified immunity pursuant to 28 U.S.C. § 1291 (1988). *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86

L.Ed.2d 411 (1985); *Green v. Brantley,* 941 F.2d 1146, 1147 (11th Cir.1991) *(en banc).*

2. Similarly, the record contains no evidence that Jones' conduct violated Tindal's constitutional rights in the manner alleged in the complaint.

Sheriff Butler not to retaliate against Tindal for having testified. The plaintiffs ultimately prevailed, obtaining a money judgment against Sheriff Butler.

In early July 1989, Tindal attempted suicide and was hospitalized for two weeks. Upon her return to work, she gave Sheriff Butler a certificate from her physician stating that she was physically and emotionally ready to return to work. The Sheriff refused to accept the certificate, however, requesting instead that Tindal submit to a mental evaluation—at the Sheriff's expense—by an independent psychiatrist. An appointment was made and Tindal kept it; she refused, however, to divulge any private information to the psychiatrist. Given this refusal, the psychiatrist saw little use in going forward with the evaluation; he therefore terminated the interview. A few days later, Tindal changed her mind and informed the Sheriff that she would be willing to see another independent psychiatrist. The Sheriff rejected her offer as the time he had set for the evaluation had elapsed.

Shortly thereafter, Sheriff Butler requested that the Sheriff's office Disciplinary Review Board (consisting of five Sheriff's office employees) advise him on appropriate disciplinary measures for Tindal. The review board recommended that Tindal's failure to submit to the psychiatric evaluation warranted the termination of her employment; Butler immediately accepted this recommendation and, on August 28, terminated Tindal's employment. On October 13, 1989, the Montgomery City–County Personnel Board (which reviews such employment decisions) upheld the termination.

On August 27, 1991, Tindal brought this suit in the United States District Court for the Middle District of Alabama against Butler (in his individual capacity), Sheriff Jones[3]

(in his individual and official capacities), and several other defendants. Tindal's nine-count complaint sought reinstatement and back-pay—or, in the alternative, compensatory damages (back- and front-pay)—as well as punitive damages. Included among the nine counts were claims that the defendants violated the First Amendment and the substantive component of the Due Process Clauses of the Fifth and Fourteenth Amendments.[4]

After the parties joined issue, the defendants moved for summary judgment on several theories. With respect to Tindal's constitutional claims, the defendants asked the court to declare that the doctrine of qualified immunity precluded Tindal from recovering damages against them in their individual capacities. The district court afforded the defendants partial relief on their motions for summary judgment. Among other things, the court dismissed Tindal's claims for damages against Jones in his official capacity; it rejected in part, however, the defendants' qualified immunity defense.

Jones and Butler appeal the district court's ruling on the qualified immunity issue, claiming error on two grounds. First, they assert that the district court erred in denying their qualified immunity defenses as to Tindal's substantive due process claim. Second, they argue that the district court erred in denying their qualified immunity defenses as to Tindal's First Amendment claim.

II

■ We first address the substantive due process issue. Relying on cases in this circuit such as *Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir.1982); and *Barnett v. Housing Auth. of Atlanta*, 707 F.2d 1571 (11th Cir.1983), Tindal contends that defendants terminated her without good cause and in an arbitrary and capricious fashion. At

---

3. In the period between Tindal's termination in 1989 and the filing of her suit in 1991, Butler retired as Sheriff; Jones succeeded him and currently occupies the position.

4. Tindal invoked the district court's federal question jurisdiction, *see* 28 U.S.C. §§ 1331, 1343

(1988), by seeking relief under 42 U.S.C. § 1983 (1988) for the constitutional violations described in the text. Her complaint also contained state law claims brought under the court's pendent jurisdiction.

the time Tindal filed her complaint, such allegations supported a claim in this circuit under the substantive component of the Fourteenth Amendment's Due Process Clause.

An intervening decision of this court, however, has altered the legal landscape. In *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994) (*en banc*), we concluded that, consistent with Supreme Court precedent, a state employee alleging a pretextual termination does *not* state a substantive due process claim; Tindal thus cannot state a valid cause of action under the substantive component of the Due Process Clause. We therefore reverse the district court's disposition of this claim and instruct the court to dismiss Tindal's substantive due process count for failure to state a claim for relief.

### III

Jones and Butler also challenge the district court's failure to grant them qualified immunity as to Tindal's First Amendment claim. In analyzing this challenge, we first discuss former Sheriff Butler's case (*see* Part A) and then the case of his successor, Sheriff Jones (*see* Part B).

### A

█ Qualified immunity shields government officials performing discretionary functions, but only to the extent that those officials' actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, in order to defeat Butler's claimed entitlement to qualified immunity, Tindal must proffer evidence that—when viewed in the light most favorable to her— demonstrates not only that Butler violated her clearly established First Amendment

rights (*see* Part 1), but also that a reasonable government official would have been aware of those rights (*see* Part 2).

### 1

█ It is axiomatic that "[a] state may not demote or discharge a public employee in retaliation for *protected* speech." *Morgan v. Ford,* 6 F.3d 750, 753–54 (11th Cir.1993) (indirectly citing *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987)) (emphasis added), *cert. denied,* —— U.S. ——, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994). The record supports Tindal's claim that she indeed suffered retaliatory action (dismissal) as a result of her speech (her affidavit and trial testimony against Sheriff Butler in the discrimination/harassment suit); a trier of fact could conclude that the Sheriff had no other cause for firing her. Butler's alleged retaliation constitutes a violation of the First Amendment, however, only if Tindal's speech was "protected." We employ a four-part test to determine whether an employer's action (such as dismissal) constitutes an illicit retaliation for protected speech in violation of the First Amendment. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565–66 (11th Cir. 1989).[5]

█ (1) The first part of the *Bryson* test asks "whether [Tindal's] speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *Bryson,* 888 F.2d at 1565 (quoting *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 (citation omitted)). If Tindal's speech touches on items of private concern, not on items of public relevance, it warrants no First Amendment protection. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). We have held that no First Amendment protection attaches to speech that—for personal benefit—exposes *personally* suffered harassment or discrimination. *See, e.g., Morgan,* 6

5. We note that our analysis does not finally resolve whether Tindal suffered a constitutional violation; that is the province of the district court on remand. Rather, we address only

whether the evidence in the record, when taken in the light most favorable to Tindal, satisfies the *Bryson* test.

F.3d at 754–55 (collecting cases). In the present case, however, Tindal's speech took place in a public forum (a federal district court proceeding), not in a private context; it also supported the discrimination and harassment claims of *other* individuals, not of Tindal herself (as Tindal was not a plaintiff and could not recover damages if the suit succeeded). Tindal's testimony, therefore, did not constitute an employee grievance motivated merely "by her ... rational self-interest in improving the conditions of her employment." *Morgan*, 6 F.3d at 755 (holding that statement challenging sexual harassment, determined to be employee grievance driven by self-interest, was not matter of public concern). Instead, Tindal's testimony on behalf of her co-workers constituted speech touching upon a public concern; it thus merited First Amendment protection. *See Marshall v. Allen*, 984 F.2d 787, 796–97 (7th Cir.1993) (denying qualified immunity to employing officials who fired male employee after he supported female coworkers in their sexual discrimination lawsuit against their mutual employer).

(2) The second part of the *Bryson* test, as applied in this case, asks whether Tindal's interest in her speech in the district court outweighed the state's interest in promoting efficient public service. *Bryson*, 888 F.2d at 1565 (quoting *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)). Courts have recognized that some speech, even though about a matter of public concern, may unreasonably disrupt the efficient conduct of government operations; in order to promote efficient public service, therefore, government employers may take action against employees who engage in such disruptive speech. Specifically, Tindal would merit no First Amendment protection if her speech "so severely impeded [her] own effectiveness and the effectiveness of [the Sheriff] that the governmental interest at stake in this case [e.g., efficient operation of the Sheriff's office] clearly outweigh[ed Tindal's] speech interest." *Morales v. Stierheim*, 848 F.2d 1145, 1151 (11th Cir.1988), *cert. denied*, 489 U.S. 1013, 109

S.Ct. 1124, 103 L.Ed.2d 187 (1989). As observed above, Tindal clearly had an interest in her speech describing the discrimination present in the Sheriff's office. The state interest half of the balance, however, is empty: Butler has proffered no evidence indicating that Tindal's speech inhibited either her work or the work of the office. Tindal satisfies this part of the *Bryson* test.

(3) The third part of the *Bryson* test examines whether the employee's speech played a substantial role in the challenged employment decision. *Bryson*, 888 F.2d at 1565 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The evidence Tindal has proffered would allow a reasonable trier of fact to conclude that Sheriff Butler terminated Tindal largely because of—if not entirely due to—her testimony against him. Thus, Tindal has met this part of the test.

(4) The final part of the *Bryson* test asks whether the employer has demonstrated that he would have terminated the employee regardless of her protected speech. *Id.*, at 1566 (quoting *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. at 576). Butler contends that he terminated Tindal solely for her refusal to submit timely to a psychiatric investigation. The record, however, indicates otherwise and reveals that Butler may have used Tindal's refusal as a pretext for terminating her.

2

Our *Bryson* analysis reveals that the record evidence—when viewed in the light most favorable to Tindal—supports her claim that Butler violated Tindal's clearly established First Amendment rights. Nonetheless, Butler would be eligible for qualified immunity if a reasonable person (in his position) would not have known that Tindal's termination violated those rights. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Butler, however, had been admonished by the trial judge in the discrimination case not to retaliate against Tindal; any reasonable person would

have realized that termination would constitute retaliation.

### 3

 We therefore conclude that, under *Harlow* and its progeny, Butler is not entitled to qualified immunity as to Tindal's First Amendment claim.[6] The district court properly reached the same conclusion.

### B

 As for Jones, Tindal has proffered no evidence indicating that he was responsible for Tindal's termination or that he took part in any alleged violation of her First Amendment rights. Jones was, at the time of the termination, a captain in the Sheriff's office and Tindal's supervisor. He did not fire Tindal, however; Butler did. In fact, although Jones sent Butler a memorandum suggesting that Tindal be reassigned, that memo does not imply that Tindal should be demoted (much less terminated). All of the evidence suggests that Butler, not Jones, committed the alleged First Amendment violations. As there is no evidence that Jones violated Tindal's rights, he is entitled to qualified immunity with respect to Tindal's First Amendment claim.

### IV

For the reasons stated above, we affirm the district court's denial of qualified immunity for Butler as to Tindal's First Amendment claim. We reverse the denial of qualified immunity for Butler as to Tindal's substantive due process claim. We also reverse the denial of qualified immunity for Jones as to both claims. We remand the case for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

---

6. We emphasize that our holding that Butler is not entitled to qualified immunity should not be read to imply that Butler necessarily violated Tindal's First Amendment rights and should be liable therefor. Rather, our conclusion is merely that the evidence currently in the record, when taken in the light most favorable to Tindal, survives Butler's motion for summary judgment premised on qualified immunity. Butler later may produce evidence tending to contradict and rebut Tindal's allegations, thus precluding recovery. *See, e.g., Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir.1994). Finally, we intimate no view as to whether Butler's conduct tainted the Montgomery City–County Personnel Board's decision upholding Tindal's termination, or, stated another way, whether Butler should be held answerable for all of the lost wages Tindal seeks to recover.