Janet MAGGIO, Plaintiff-Appellee,

v.

Cathy SIPPLE, individually;  Yolanda Dennis, individually;  et al., Defendants-Appellants.

No. 99-12884.

United States Court of Appeals,

Eleventh Circuit.

May 17, 2000.

Appeal from the United States District Court for the Middle District of Florida.(No. 98-02473-CIV-T-17B), Elizabeth A. Kovachevich, Chief Judge.

Before EDMONDSON and HULL, Circuit Judges, and WOOD[*], Senior Circuit Judge.

HULL, Circuit Judge:

Plaintiff-Appellee Janet Maggio ("Maggio") brought this action against her employer, the State Department of Labor and Employment Security ("DLES"), and against Defendants-Appellants Cathy Sipple, Yolanda Dennis, Joyce McKenzie, Isabell Davis, Jerry Singletary, and Renee Benton, in their individual capacities.  Maggio asserted a § 1983 claim against only the individual Defendants-Appellants and disability discrimination claims against only DLES under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

This interlocutory appeal concerns solely Maggio's § 1983 claim, which alleges that the individual Defendants retaliated against her for exercising her First Amendment rights.  *See* 42 U.S.C. § 1983.  The individual Defendants appeal the district court's denial of their Rule 12(b)(6) motion to dismiss the § 1983 claim on qualified immunity grounds.  *See Maggio v. Florida Dep't of Labor & Employment Sec.,* 56 F.Supp.2d 1370 (M.D.Fla.1999).  After review, we conclude that the individual Defendants are entitled to qualified immunity on Maggio's § 1983 claim and reverse.

## I. THE COMPLAINT

---

[*]Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

Maggio was a Customer Service Specialist employed by DLES from April 15, 1985, until her resignation on May 15, 1998. The six individual Defendants were also DLES employees. Defendant Cathy Sipple was Maggio's immediate supervisor during the relevant time period. The other Defendants held these positions: Yolanda Dennis was a Personnel Technician; Joyce McKenzie was a Human Service Program Specialist; Isabell Davis was a Program Administrator; Jerry Singletary was the Tampa Jobs and Benefits Manager; and Renee Benton was the Regional Administrator.

Maggio's complaint states that she is legally blind. Her vision is not better than 20/300 in her right eye and is worse in her left eye. The complaint alleges that DLES, through its employees, discriminated against Maggio because of her disabilities and failed to provide her reasonable accommodations in violation of the ADA and the Rehabilitation Act. Maggio alleges that DLES, through its employees, failed, *inter alia,* to provide special computer equipment to allow her to have full-line text in 36-point font, to train Maggio regarding computers, to provide "pink lights," and to make various other accommodations.

In addition to her several disability discrimination claims, Maggio also brought a § 1983 claim alleging that the six individual Defendants retaliated against her after she testified on behalf of Johnnye Davis ("Davis") at Davis's grievance hearings. Davis was Maggio's supervisor at DLES prior to Cathy Sipple. Davis was charged with insubordination and filed a grievance. Davis's grievance was upheld, and her insubordination charge was overturned. DLES later terminated Davis's employment. Davis appealed that decision. Maggio again testified on Davis's behalf in the administrative appeal process. The termination was overturned, and Davis was reinstated in a management position, although in a different section.

According to the complaint, Maggio's testimony at Davis's hearings "did not involve matters of Janet Maggio's personal interest, but were [sic] matters of public concern in that they related to the fair and honest implementation of the DLES's personnel policies and the rights to redress complaints through appeal procedures established by the DLES." Complaint, ¶ 21. Maggio alleges that the individual Defendants retaliated against her by "causing, allowing, or ratifying the denial of, delay in providing, and failure to

2

provide reasonable accommodations" for Maggio's disability. Complaint, ¶ 32. Additionally, Maggio asserts that the individual Defendants retaliated against her for her protected speech by "causing, allowing, or ratifying ... the creation of [a] discriminatory, humiliating, intimidating, abusive, hostile, working environment that substantially altered the working conditions under which [she] worked when compared with the terms and conditions experienced by other employees similarly situated." Complaint, ¶ 32.

The district court denied the individual Defendants' Rule 12(b)(6) motion to dismiss Maggio's § 1983 claim based on qualified immunity. Defendants timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The denial of qualified immunity on a motion to dismiss is an appealable interlocutory order. *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985). We review *de novo* the denial of qualified immunity. *See Jordan v. Doe,* 38 F.3d 1559, 1563 (11th Cir.1994); *Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir.1990). The determination of whether a complaint sufficiently alleges a constitutional violation is also a matter of law reviewed *de novo. See GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998). In reviewing the complaint, we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff. *See id.; Williams v. Alabama State Univ.,* 102 F.3d 1179, 1182 (11th Cir.1997).

## III. DISCUSSION

*A.     Qualified Immunity*

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).[1] The individual

---

[1]*See also Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290, 1295 (11th Cir.1998); *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir.1998); *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539

Defendants are undisputedly government officials. Thus, to determine whether these Defendants are entitled to qualified immunity, we conduct a two-step inquiry. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir.1998). First, we consider whether " 'the defendant government official [has proved] that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred.' " *Gonzalez v. Lee County Hous. Auth.,* 161 F.3d 1290, 1294-95 (11th Cir.1998) (quoting *Evans v. Hightower,* 117 F.3d 1318, 1320 (11th Cir.1997)). If so, then we examine whether the plaintiff has demonstrated that "the defendant violated clearly established law." *Gonzalez,* 161 F.3d at 1295; *Harbert Int'l,* 157 F.3d at 1281; *see also Rowe v. Schreiber,* 139 F.3d 1381, 1383 (11th Cir.1998).

Maggio does not dispute that the individual Defendants were acting within the scope of their discretionary authority when the allegedly wrongful conduct occurred.[2] Thus, we consider only whether Maggio has demonstrated that the individual Defendants violated clearly-established law. *See Gonzalez,* 161 F.3d at 1295.

B.    *Constitutional Violation Required*

The Supreme Court has held that a "necessary concomitant" to the question of whether a plaintiff has alleged a violation of a clearly-established federal right is "the determination of whether the plaintiff has

---

(11th Cir.1994).

[2]The district court erred in concluding *sua sponte* that the individual Defendants had not met their burden at this first step of the analysis. The district court examined whether it was within the Defendants' discretionary authority to retaliate against a public employee for a protected exercise of her First Amendment rights. *See Maggio v. Florida Dep't of Labor & Employment Sec.,* 56 F.Supp.2d 1370, 1377 (M.D.Fla.1999) (reasoning that "[r]etaliation cannot be considered an act within the individual Defendants' discretionary authority"). However, as this Court emphasized in *Harbert International,* "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act.... 'Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.' " *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (quoting *In re Allen,* 106 F.3d 582, 594 (4th Cir.1997)); *see also Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992) (rejecting the contention that "any time a government official violates clearly established law he acts beyond the scope of his discretionary authority" as "untenable" and explaining that "the question of whether the defendants acted lawfully [is distinct from] the question of whether they acted within the scope of their discretion").

4

asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1366-67 (11th Cir.1998); *Cottrell v. Caldwell,* 85 F.3d 1480, 1485 (11th Cir.1996). "If a plaintiff has not sufficiently alleged a violation of *any* constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right." *GJR Invs., Inc.,* 132 F.3d at 1367; *see also Marshall v. Allen,* 984 F.2d 787, 793 (7th Cir.1993) ("Courts are not required to examine the clearly established law at the time of the offense if the plaintiff's allegations do not assert a violation of constitutional rights." (citing *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793)). Maggio alleges that the individual Defendants retaliated against her in violation of her First Amendment right to freedom of speech for testimony she gave while employed by DLES. Thus, we examine whether Maggio's complaint sufficiently alleges a violation of her First Amendment right to freedom of speech.

Maggio does not dispute that, as a government employee, she does not enjoy an absolute right to freedom of speech. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989) ("Although the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute." (citing *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987))). Instead, Maggio's speech is constitutionally protected only if it satisfies both elements of the test set forth in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and refined in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (the "*Pickering-Connick* test"): (1) as a threshold matter, the speech must be "fairly characterized as constituting speech on a matter of public concern," *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690; and (2) her First Amendment interests in commenting on matters of public concern must outweigh the government's interests, " 'as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering,* 391

U.S. at 568, 88 S.Ct. at 1734). *See also Bryson,* 888 F.2d at 1565. Thus, to establish a constitutional violation, Maggio's speech must satisfy both elements of the *Pickering-Connick* test.

C.      *No Public Concern Shown*

Accordingly, we turn to the threshold question of whether Maggio's testimony at Davis's grievance hearings, as described in her complaint, may be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690; *Bryson,* 888 F.2d at 1565. "This question is one of law, not of fact." *Gonzalez,* 161 F.3d at 1297 (citing *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7). To involve a matter of public concern, a government employee's speech must "relat[e] to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690. If the government employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

Therefore, this Court must discern whether Maggio spoke primarily as a citizen on behalf of the public or primarily as an employee upon matters of personal interest. *See Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690; *Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir.1993). As this Court recognized in *Morgan,* because "[a]n employee's speech will rarely be entirely private or entirely public," the "main thrust" of the employee's speech must be determined. 6 F.3d at 755. This determination is made by examining "the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690; *Morgan,* 6 F.3d at 754.

We find that Maggio's testimony, in content, form, and context, closely resembles the speech at issue in *Morgan,* where this Court held that no public concern was shown as a matter of law. In *Morgan,* the plaintiff was a State Department of Corrections employee, who claimed that she had been retaliated against for complaining about sexual harassment by her supervisor. 6 F.3d at 751. One of the plaintiff's co-workers

6

lodged a complaint against their mutual supervisor and identified the plaintiff as a corroborating witness. *Id.* at 752. As a result, the Department Superintendent requested a meeting with the plaintiff. During that meeting, the plaintiff told the Superintendent about the supervisor's behavior towards her and her co-worker. *Id.* The plaintiff subsequently filed her own sexual harassment charges against her supervisor, first with the Department's Internal Affairs Division, and then with the State Office of Fair Employment Practices. *Id.* at 752-53. The plaintiff argued that her complaints of sexual harassment constituted speech on a matter of public concern because they related to "a matter of vital social interest." *Id.* at 754.

Although this Court in *Morgan* agreed that workplace sexual harassment is a matter of important social interest, the Court explained that "the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Id.* at 754 (citations omitted). Instead, the Court emphasized that the relevant inquiry is "whether the purpose of [the plaintiff's] speech was to raise issues of public concern ... or to further her own private interest." *Id.* The *Morgan* Court observed that the plaintiff's speech largely focused on her supervisor's behavior and its affect on her work, took the form of complaints to official bodies, did not in any way draw "the public at large or its concerns into the picture," and "was driven by her own entirely rational self-interest in improving the conditions of her employment." *Id.* at 755.

In *Morgan,* this Court acknowledged that the plaintiff's speech about the harassment of her co-worker "contain[ed] a public concern aspect." *Id.* However, we did not find that determinative and emphasized that "the main thrust of [the plaintiff's] speech took the form of a private employee grievance." *Id.* As a result, in *Morgan,* this Court concluded that the plaintiff's speech "was not a matter of public concern." *Id.*

For several reasons, we find that under *Morgan,* Maggio's § 1983 claim does not allege any speech on a matter of public concern. First, regarding the forum of Maggio's testimony, Maggio alleges that she testified on behalf of her supervisor at a hearing relating to a grievance her supervisor filed after being charged with insubordination and at a hearing relating to her supervisor's administrative appeal of her

termination. Maggio does not allege that these employee grievance hearings were open to the public. The speech in *Morgan* was directed to the same type of official administrative bodies—"the Superintendent of ACMI, Internal Affairs, and the Office of Fair Employment Practices." *Morgan,* 6 F.3d at 755. As a result, this Court determined in *Morgan* that the plaintiff "did not relate her concerns about sexual harassment to the public." *Id.* Similarly, Maggio related her concerns to official administrative bodies but not to the public.

Second, as far as the content of Maggio's testimony, the complaint alleges that Maggio's testimony on behalf of Davis "did not involve matters of Janet Maggio's personal interest, but were [sic] matters of public concern in that they related to the fair and honest implementation of the DLES's personnel policies and the rights to redress complaints through appeal procedures established by the DLES." Complaint, ¶ 21. Just as the public in *Morgan* might be interested in a supervisor's sexual harassment of State Department of Corrections employees, the public arguably might be interested in the fair and honest implementation of DLES's personnel policies and appeal procedures. However, as the Court emphasized in *Morgan,* the relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is "whether the purpose of [the plaintiff's] speech was to raise issues of public concern." *See Morgan,* 6 F.3d at 754.

The purpose of Maggio's testimony was to support the grievance of her supervisor charged with insubordination. Helping one's supervisor defend a charge of insubordination and gain reinstatement would curry the favor of one's supervisor, or improve the conditions of her employment to some extent, and thus further Maggio's personal interest. Additionally, Maggio does not allege that her testimony at her supervisor's hearings was about any fraud or corruption in DLES's implementation of its personnel policies and appeal procedures either in general or in Davis's case in particular. Much like the speech in *Morgan,* the primary purpose of Maggio's testimony appears to have been to support an employee's private grievance—her supervisor's effort to have her insubordination charge overturned and to be reinstated after her termination. *See Morgan,* 6 F.3d at 755. Moreover, as in *Morgan,* the fact that Maggio was testifying in another employee's grievance proceedings, rather than her own grievance, does not automatically establish that

8

Maggio's speech involved a matter of public concern. *See Morgan,* 6 F.3d at 755 (noting that part of the plaintiff's speech in issue was "about her co-worker's plight").[3] For all of these reasons, we conclude that Maggio did not speak primarily as a citizen on behalf of the public but instead spoke primarily as an employee upon matters of personal interest. *See Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690; *Morgan v. Ford,* 6 F.3d at 754.

Even though *Morgan* is closely in point, Maggio relies heavily upon our decision in *Tindal v. Montgomery County Commission,* 32 F.3d 1535 (11th Cir.1994), where the speech at issue was held to be a matter of public concern. However, *Tindal* involved circumstances materially different from those in this appeal. The plaintiff in *Tindal* was a County Sheriff's office employee who executed an affidavit in a race and sex discrimination lawsuit against the Sheriff in federal court and, at the jury trial, testified, under subpoena, about the working environment in the office. *Id.* at 1537. In finding that the plaintiff's testimony touched on a matter of public concern, the Court stressed that the speech in *Tindal* "took place in a public forum (a federal district court proceeding), not in a private context." 32 F.3d at 1540. In contrast, Maggio does not allege that her speech took place in a public forum. Instead, she alleges only that she testified at her supervisor's two administrative grievance hearings.

In *Tindal,* the Court also emphasized that the plaintiff "was not a plaintiff [in the race discrimination and sexual harassment suit] and could not recover damages if the suit succeeded." 32 F.3d at 1540. The Court found the plaintiff's speech in *Tindal* "did not constitute an employee grievance motivated merely 'by [the employee's] ... rational self-interest in improving the conditions of her employment.' " *Id.* (quoting *Morgan,* 6 F.3d at 755). As already discussed, however, Maggio's testimony was primarily motivated by her rational self-interest in improving the conditions of her employment by helping her supervisor defend against a charge of insubordination and gain reinstatement.

---

[3]*See also Morgan,* 6 F.3d at 752 (explaining that the plaintiff initially met with the Superintendent to discuss her co-worker's sexual harassment charges against her supervisor, that at the meeting, the plaintiff also told the Superintendent about her supervisor's behavior toward her, and that acting on the suggestion of the Superintendent, the plaintiff then filed her own charges against her supervisor).

In sum, Maggio's speech is analogous to the speech in *Morgan* and not to the speech in *Tindal*. Indeed, the content, form, and context of Maggio's testimony, as described in her complaint, require us to conclude that Maggio has not alleged speech on a matter of public concern. Because she has not satisfied this threshold inquiry, it is not necessary to reach the next step in the *Pickering-Connick* analysis. Instead, we find that Maggio has not alleged a First Amendment violation.

D.      *No Notice that Actions Would Violate Clearly-Established Law*

Even assuming *arguendo* that Maggio has alleged a First Amendment violation, we also conclude that the individual Defendants are nonetheless entitled to qualified immunity. To defeat a defendant's claim to qualified immunity, a plaintiff must show that a reasonable person in the defendant's position would have been on notice that his actions violated clearly-established law. *See Martin v. Baugh,* 141 F.3d 1417, 1420 (11th Cir.1998), *cert. denied* 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 771 (1999); *Rowe v. Schreiber,* 139 F.3d 1381, 1384 (11th Cir.1998); *Lassiter v. Alabama A & M Univ. Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994). Maggio has not made such a showing.

"For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter,* 28 F.3d at 1149 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). As this Court emphasized in *Lassiter,* "courts must not permit plaintiffs to discharge their burden by referring to general rules and the violation of abstract 'rights.' " *Id.* at 1150. This is because "[q]ualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases." *Id.* at 1149-50. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *as modified,* 14 F.3d 583 (11th Cir.1994).

Because the analysis of First Amendment retaliation claims under the *Pickering-Connick* test "involve[s] legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules ... a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." *Martin v. Baugh,* 141 F.3d 1417, 1420 (11th Cir.1998). To establish that the defendant was on notice, the plaintiff must "either produce a case in which speech materially similar to [hers] in all *Pickering-Connick* respects was held protected, ... or show that, on the facts of [her] case, no reasonable person could believe that both prongs of the test had not been met." *Id.*

As already indicated in the discussion of whether Maggio has alleged a First Amendment violation, the allegations of Maggio's complaint do not so clearly establish that her testimony at Davis's grievance hearings satisfied both prongs of the *Pickering-Connick* test that "no reasonable person could believe that both prongs of the test had not been met." *Id.* Furthermore, we find that Maggio has failed to produce a case in which speech materially similar to hers was held to be protected. Consequently, Maggio has not established that the individual Defendants' actions violated her clearly-established rights.

## IV. CONCLUSION

For these reasons, we conclude that the individual Defendants are entitled to qualified immunity. The order of the district court denying qualified immunity to the individual Defendants is reversed and vacated, and the case is remanded to the district court with instructions to grant the individual Defendants' motion to dismiss Maggio's § 1983 claim against them.

REVERSED, VACATED, and REMANDED.

11