[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2012
JOHN LEY
CLERK

_____

No. 11-10819
Non-Argument Calendar
_____

D.C. Docket No. 6:09-cv-00750-GAP-GJK

PRINCE D. BROWN,

Plaintiff - Appellant,

versus

SCHOOL BOARD OF ORANGE COUNTY, FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 28, 2012)

Before DUBINA, Chief Judge, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Prince Brown, an African-American, appeals the district court's grant of defendant Orange County School Board's ("OCSB") motion for summary judgment as to his complaint alleging racial discrimination, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), and 42 U.S.C. §§ 1981 and 1983, and retaliation in violation of his First Amendment free speech rights, brought under 42 U.S.C. § 1983. Brown complained of adverse employment actions when OCSB, his former employer, suspended him twice without pay and then failed to renew his employment contract.[1] On appeal, Brown argues that: (1) the district court erred in finding that he failed to establish a *prima facie* case of racial discrimination because he could not identify a similarly situated employee; (2) the district court erred in determining that his right to free speech was not violated because, when he complained to OCSB's Employee Relations Department about OCSB's hazardous material practices, he was not speaking as a citizen on a matter of public concern. Each of these issues is addressed separately below.

---

[1] While Brown also complained initially that his white co-workers received better treatment, in that they were given offices and access to county vehicles, because he does not raise these claims on appeal, he has abandoned them. *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1259 n.1 (11th Cir. 2007) (per curiam) (holding that, because the plaintiff did not object to the district court's disposition of his Rehabilitation Act claim on appeal, the claim had been abandoned).

We review a district court's grant of summary judgment *de novo*. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of a dispute over a material fact. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993). The evidence and factual inferences from the evidence are construed favorably to the party opposing summary judgment. *Id.*

## I. Racial Discrimination Claims

Brown argues that summary judgment was inappropriate as to his discrimination claims under Title VII and §§ 1981 and 1983 because there was an issue of material fact as to whether two of his fellow employees were valid comparators, as they had the same job title, and all three were involved with misconduct regarding the handling of hazardous materials at OCSB facilities.

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Under 42 U.S.C. § 1981, all citizens shall have the same right to "make and enforce contracts" without the impediment of racial discrimination. Claims

3

against state actors under § 1981 must be brought pursuant to 42 U.S.C. § 1983. *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000). Title VII and § 1981 have the same requirements of proof and utilize the same analytical framework. *Brown v. Amer. Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991).

Under Title VII, a plaintiff bears "the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008) (internal quotation marks and citation omitted). A plaintiff may establish a claim of illegal disparate treatment through either direct or circumstantial evidence. *Id.* at 975-76. Where, as here, a party seeks to establish discrimination through circumstantial evidence, we evaluate the claim under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See id.* Under this framework, the plaintiff bears the threshold burden of establishing a *prima facie* case of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). The elements of a *prima facie* case and the manner of establishing those elements are not fixed, but will vary depending on the situation. *Id.* In general, a plaintiff establishes a *prima facie* case of race discrimination by showing that: (1) he is a member of a racial minority; (2) he suffered an adverse employment action; (3) the employer treated

4

similarly situated employees outside his racial minority more favorably; and (4) he was qualified for his employment. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

"Evidence that similarly situated employees are disciplined more leniently is admissible to support a disparate treatment claim when the plaintiff has established that the co-employees are in fact similarly situated." *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001). To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects. *Holifield*, 115 F.3d at 1562. If this is not the case, "the different application of workplace rules does not constitute illegal discrimination." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). We have stated that "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Id.* When an individual proves that he suffered an adverse employment action while his comparator did not, although they both violated the same work rule, "this raises an inference that the rule was discriminatorily applied." *Id.* (citation omitted). In addition, we require "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and

5

confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

Here, we conclude from the record that the district court correctly determined that Brown could not establish a *prima facie* case of racial discrimination because he could not identify a similarly situated employee. OCSB provided evidence establishing that Brown had a different area of responsibility from those employees he sought to establish as comparators. Moreover, OCSB provided evidence to establish that Brown suffered adverse employment action due to an investigation into his area of responsibility. Employees with different areas of responsibility were not similarly situated to Brown in "all relevant respects," *see Holifield*, 115 F.3d at 1562, and their conduct cannot be considered "nearly identical" to that of Brown, *see Maniccia*, 171 F.3d at 1368. Accordingly, we affirm the district court's grant of summary judgment with respect to Brown's claims of racial discrimination under Title VII and §§ 1981 and 1983.

## II. First Amendment claim

Next, Brown argues that the district court erred in concluding that OCSB did not violate his First Amendment right to free speech. Specifically, Brown argues that he spoke in his capacity as a citizen involving a matter of public concern: the deliberate mishandling of hazardous materials on public school

6

campuses.

The government may not discharge an employee on a basis that infringes the employee's constitutionally protected speech interest. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). However, a public employee's speech is entitled to protection only when the employee spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006). Claims by a public employee alleging retaliation in violation of the First Amendment can be raised pursuant to 42 U.S.C. § 1983. *See, e.g., Randall v. Scott*, 610 F.3d 701, 703 (11th Cir. 2010).

We have applied a multi-stage analysis to cases involving a public employee's free speech rights. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157 (11th Cir. 2002). First, we examine "whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 2897 (1987)). This involves analyzing the content, form, and context of the speech. *Brochu*, 304 F.3d at 1157. If this requirement is met, we then apply a balancing test, weighing the interests of the employee against the interests of the public employer. *Id.* The first two steps are questions of law. The inquiry ends here unless the first two steps are satisfied. *Id.*

7

In order to determine whether the speech is on a matter of public concern, we must determine whether the speech was made primarily in the employee's role as a citizen or as an employee. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006) (per curiam). When a public employee speaks pursuant to his "official duties," the employee is not speaking as a citizen, and the speech will not be protected by the First Amendment. *Id.* The practical inquiry asks whether the speech "owes its existence to [the] employee's professional responsibilities." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1283 (11th Cir. 2009) (citing *Garcetti*, 547 U.S. at 421, 126 S. Ct. at 1960). Relevant, but nondispositive factors in this inquiry include an employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job. *Abdur-Rahman*, 567 F.3d at 1282-83. We have not previously allowed employees to obtain constitutional protection for statements that owe their existence to the employee's performance of his official responsibilities, even if he was not required to make the speech as a part of his official duties. *Id.* at 1286.

Here, we conclude from the record that the district court did not err in determining that Brown's speech at issue was not protected by the First Amendment. Brown's speech concerned the storage and handling of hazardous materials and dangers encountered during the performance of his job and within

8

his job responsibilities. In addition, Brown's speech occurred in the workplace, through OCSB's Employee Relations Department, rather than in a public forum, another fact indicating that he was not speaking as a citizen on a matter of public concern. Because Brown cannot establish that he was speaking on a matter of public concern, the inquiry ends here. *See Brochu*, 304 F.3d at 1157. Accordingly, we affirm the district court's determination that OCSB did not violate Brown's First Amendment right to free speech.

## Conclusion

For the aforementioned reasons, we affirm the district court's grant of summary judgment in favor of OCSB.

**AFFIRMED.**